GEORGE W. HARTNETT et al., Appellants, v. MARY GRACE LANGAN, Administratrix of Estate of PETER LANGAN, et al.; WILLIAM CONNELLY, Appellant.

Division One, June 2, 1920.

1. **INTEREST: Surrender of Named Rate: Ratification.** Where the note was to bear five per cent interest until maturity and eight per cent thereafter, and the payee, after maturity, received all the interest then due and wrote a receipt which recited that the note was to draw five per cent from that date, and accepted five per cent annually thereafter until her death, five per cent is all that can be collected by her legal representative; and if the maker of the note supposed the money it called for was an individual debt due by his father to the payee, whereas it was a part of a trust fund in which the payee had only a life estate, the remaindermen, by treating the note as given for their benefit, must accept it as the payee held it, and thereby they ratify her act in changing the rate of interest after maturity to five per cent.

2. **TRUST FUND: Settlement by Life Tenant: Ratification by Remaindermen.** Where a note was given by the original trustee's widow under the impression on her part that it was for the sole benefit

of the payee and that she owned the principal of a trust fund, and the note was given and taken to make up the full amount of the fund, whereas the payee was entitled only to the interest and income during her life, and after her death it was turned over to the trustee for the remaindermen, and he and they come into court claiming it as a part of the trust fund, they must take it as the payee received it, as the full amount of the trust fund due.

3. ———: Title of Trustee's Heirs: Devolution: Compensation. The heirs of the original trustee do not take title to a trust fund which has been dissipated, for then there is no trust fund to devolve upon them. If the trust fund is personal property it passes, upon the trustee's death, into the hands of his administrator (if there is one), as bailee, and not as an heir. If the trustee's heirs voluntarily recreated the dissipated trust fund by giving their notes to the life tenant and did not claim to hold or administer the same under the instrument creating the fund, they cannot afterwards assert title by devolution as heirs of the trustee. In any such case. therefore, they are not entitled to receive any compensation for preserving or returning the trust fund as successors of the trustee.

4. COUNSEL FEES: Allowance for Estate Debtor. The debtor of an estate is not entitled to an allowance of counsel fees, although it becomes necessary for him to pay the amount due into a court of equity and seek its aid in relieving his property from a mortgage securing the debt.

5. FOREIGN DEBT: Title of Administrator and Trustee: Power to Collect: Counsel Fees. A foreign administrator has no title to a note from citizens of this State secured by mortgage upon domestic property, nor right to collect and receipt for it; and a trustee, who derives his powers to collect and administer a trust fund wholly from an order of a foreign court, has no more power to collect or receipt for such a note than has a foreign administrator; and if a note evidencing the debt to the trust fund is lost and in consequence it becomes necessary for the debtor to resort to a court of equity to have his domestic property relieved from a mortgage securing the note, he is not entitled to counsel fees, for the suit is brought primarily for his own benefit.

6. TRUST FUND: Increment. If the trust fund was not used in the purchase of property conveyed by the trustee to his wife, the beneficiaries are not entitled to recover from the wife, who gave her note in settlement of the balance of the debt, any profits in addition to the debt realized by her from the sale of the property.

7. WILL: Contingent Remainder: When Title Vests. The sixth clause of the will, probated in 1856, read: "I give, bequeath and devise to my niece, Winefred Langan, for life the other half of the residue

Hartnett v. Langan.

of my estate, remainder in fee to the heirs of her body, or in default of such issue, at her death then remainder in fee to her father, mother, brothers and sisters equally, or their heirs taking *per stirpes*." *Held*, that the clause created a contingent remainder, and it could not be determined until the death of said Winefred whether or not she would leave bodily heirs, and as she died leaving no such heirs the title vested upon her death in such of her brothers and sisters or their heirs as were then living *per stirpes*, and her sister, who died prior to her death, took no interest in the property, nor did the husband of a deceased only child of such deceased sister. The right and title of her father, mother, brothers and sisters were wholly contingent upon Winefred's dying without living descendants, and that fact could not be ascertained until her death, and consequently the contingent remainder did not vest during her life, in any of them, but only vested upon her death in such of them as were living at the time of her death, or in the living heirs of those who were then deceased.

8. ————: ————: **Heir of Deceased Remainderman.** The remainder devised by said clause of the will to Winefred's father, mother, brothers and sisters equally, or their heirs *per stirpes*, was subject to another contingency, for they were to take the remainder only in case they were living at her death, because if they were then deceased their heirs were to take their portion *per stirpes*, not as heirs by descent, but as purchasers; and if a remainderman was dead at the time of Winefred's death only the heirs of such deceased remainderman took the title, and if the only child of said deceased remainderman had previously died the father of said child took nothing. So if a sister of said Winefred died prior to her death, and then the only child of said sister died, also prior to Winefred's death, the said child did not and could not take under said will as her mother's heir, and transmitted nothing by inheritance to her father, and he was not the heir of his wife.

9. ————: ————: **Inheritance by Dead.** As no one is heir of the living, so the dead are heirs of no one.

10. ————: ————: **Right of Husband of Deceased Remainderman.** Where under the terms of the will the title could not vest until the death of the life tenant, and if she died without leaving bodily descendants it was to vest in her brothers and sisters equally, or their heirs *per stirpes*, and her sister's death preceded her own, and then an only child of said deceased sister died, also prior to the life tenant's death, under the Statute of Descents and Distributions (Sec. 332, R. S. 1909) the heirs of such deceased sister were her father, mother, brothers and sisters, or their descendants, living at the time of the life tenant's death, and if there were such her husband took nothing.

11. ——: ——: **Life Tenant As Heir: Administration Fees.** If the will gives a remainder to the life tenant's father, mother. brothers. and sisters, or their heirs, contingent upon her death without surviving bodily descendants, she takes nothing by inheritance from them upon their death prior to her own, for until her death they had nothing; and consequently, her devisee took nothing, and her administrator is entitled to nothing except unpaid interest and income up to the time of her death.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

AFFIRMED (*in part*).

*Ford & Jones, Bruce A. Campbell, S. P. Bond* and *Hugh V. Murray,* for Mary Grace Langan, Administratrix of the Estate of Peter Langan; William Langan; Mary Grace Langan, Executrix of the Will of John Francis Langan; Arthur C. Langan, Owen M. Langan, James Langan, Mignon McNally, Sterling P. Bond, and Fred Schlafly, Trustee.

(1)   The court erred in not overruling the objections to the introduction of any evidence under the plaintiffs' amended petition on the ground that the plaintiffs have no interest whereby they could bring this suit, and on the ground that the amended petition does not state facts sufficient to constitute a cause of action in behalf of the plaintiffs.   The power of trustee cannot be exercised by the heirs, personal representatives or assigns of the donee unless they are expressly authorized by the grantor to do so.   Mason v. Bank of Commerce, 16 Mo. App. 278;   Bales v. Perry, 51 Mo. 451;   Hook v. Dyer, 47 Mo. 218;   Sec. 2866, R. S. 1909;   Fuller v. Davis, 63 Miss. 78;   Clark v. Wilson, 53 Miss. 127; Titley v. Wolstenholme, 7 Beav. 425.   Duty of administering a trust estate, does not, on the trustee's death, pass to his executor, the latter, however, on receiving the trust fund, together with the testator's property, is charged with the duty as a bailee to preserve it intact for the

true owner and of turning it over to new trustees when they are legally appointed. State ex rel. v. Mississippi Valley Trust Co., 209 Mo. 472; Ewing v. Shanahan, 113 Mo. 196. (2) The court erred in not sustaining the objection to the introduction of any evidence under the plaintiff's petition because it did not state facts sufficient to constitute a cause of action in that the plaintiffs failed to state in their petition (1st) that the full amount on the principal and interest on the last note secured by the deed of trust had been tendered, (2nd) that defendant Schlafly, trustee, had been tendered the costs of satisfaction of the deed of trust and (3rd) that he had refused to satisfy same. Dunkin v. Life Ins. Co., 63 Mo. App. 257; Dodson v. Clark, 49 Mo. 152; Phelps v. Relfe, 20 Mo. 479; McCormick v. McDonald, 70 Mo. App. 391; Kingston v. Newell, 125 Mo. 389; Strong v. Wilson, 14 Mo. 116; Henderson v. Cass County, 107 Mo. 56; Bertold v. Reyburn, 37 Mo. 595. (3) The intention of the testator, William Tighe, as expressed in the will, must prevail. Dickerson v. Dickerson, 211 Mo. 487; Eckle v. Ryland, 256 Mo. 440; McGuire v. More, 108 Mo. 274; Emison v. Whittlesey, 55 Mo. 255; DeLassus v. Gatewood, 71 Mo. 375; Buxton v. Kroeger, 219 Mo. 245; Long v. Timms, 107 Mo. 519; Tisdale v. Prather, 210 Mo. 407; Sec. 4650, R. S. 1899. The circuit court was right in holding that under said will, at the time of death of Winefred McCabe (nee Langan), October 9, 1916, she dying without ever having issue of her body, her surviving brothers, at her death, Peter Langan, William Langan and John Langan, were each entitled to one-fourth of the trust fund under said sixth clause in question, and that the surviving children of her dead brother, James Langan, were each entitled to one-sixteenth of the trust fund in question, under said sixth clause. Dickerson v. Dickerson, 211 Mo. 490; Ducker v. Burham, 146 Ill. 922; State ex rel. v. Prewett, 20 Mo. 165; Long v. Timms, 107 Mo. 512; Maguire v. Moore, 108 Mo. 267; Emison v. Whittlesey, 55 Mo. 254; DeLassus v. Gatewood, 71 Mo. 371; Burton v. Kroeger, 219 Mo. 240;

Eckle v. Ryland, 256 Mo. 451; Taylor v. Adams, 93 Mo. App. 280; Gates v. Seibert, 157 Mo. 270; Emerson v. Hughes, 110 Mo. 627; Rodney v. Landau, 104 Mo. 258; Secs. 2873, 2874, R. S. 1909; Secs. 6 and 7, chap. 32, R. S. 1845; Secs. 6 and 7, 1 R. S. 1855, p. 55. (4) As the remainder in this case was contingent, neither Mary Catherine Connolly nor her daughter, Winefred Connolly (both dying before Mrs. McCabe), had any descendable interest which would pass to William Connolly. DeLassus v. Gatewood, 71 Mo. 371; Emmerson v. Hughes, 110 Mo. 627. (5) The class was subject to diminution by the death of one of its members, or all before the death and expiration of the trust estate of Winifred McCabe, but to as many of the members of the class as were living at the death of Winefred McCabe, the estate in remainder became absolute. Long v. Timms, 107 Mo. 512; Springer v. Congleton, 30 Ga. 976; Stedman v. Priest, 103 Mass. 293; Johnson v. Calvert, 260 Mo. 454. (6) The plaintiffs are liable for the profits which they received out of the Sixth and Walnut Streets property and the St. Louis County property purchased with the trust funds in the hands of Michael J. Hartnett. Angèles v. Chicago, St. P. & C. Ry., 151 U. S. 127; Pomeroy Eq. Jus. sec. 155; Pride v. Fooke, 2 Beav. 430; Dimer v. Scott, 4 Russ. Chanc. 195; Davis v. Hoffman, 167 Mo. 573; Richard v. Pettis, 124 Mo. 905; Unean v. Rieger, 105 Mo. 675.

*W. B. & Ford W. Thompson* for George W. Hartnett et al.; *Tibbets & Green* and *Sanders & Forgey* for William Connolly.

(1) Upon the death of a sole or surviving trustee and before the appointment of a successor, the legal title of the real property held in trust vests subject to the trust in the heirs of the trustee, and the title of the personal property in his personal representatives, to the exclusion of other persons. Ewing v. Shanahan, 113 Mo. 188. Upon the death of a trustee the trust may devolve upon his heir or administrator until a new trustee

is appointed. 3 Pomeroy's Eq. Jurisp. (3 Ed.) sec. 1061, note 5. (2) The plaintiffs in this case were entitled to the release of the deed of trust upon the payment of the balance of the principal note and five per cent interest thereon, being the full amount paid into court, and entitled to a decree. (a) They were within the equitable rule "that he who seeks equity must do equity, and that these terms will be imposed as the price of the decree it gives them." (b) Because the note had been extended after maturity at five per cent interest, and this note at maturity, so far as the plaintiffs knew, were informed and believed, belonged to Winefred McCabe, and that she had extended the payment of this note after its maturity. (c) If this note belonged to Schlafly, as trustee of all of the defendants in the case, under the decree of the Illinois court, then he had, as trustee, accepted five per cent interest on the note after its maturity and had not insisted upon eight per cent after its maturity, and acted as trustee both before and after the death of Winefred McCabe. (d) The payment and tender into court of the balance due on the note and five per cent interest thereon under the agreement of extension of the note, was in equity an extinguishment of the note and also the lien of the mortgage . Kline v. Vogel, 90 Mo. 239; Whelan v. Reilly, 61 Mo. 565; Gilsey v. Gilsey, 198 Mo. App. 505; Veney v. Furth, 171 Mo. App. 708. (3) The expenses of such litigation, as it respects all the parties, and as between the attorney and client, is charged upon the whole estate, together with the fees of such trustees. Sandusky v. Sandusky, 265 Mo. 219; 1 Redfield on Wills (4 Ed.), p. 495.

SMALL, C.—Appeal from the Circuit Court of the City of St. Louis. The facts we find to be substantially as follows:

In 1856, William Tighe, a resident of Carlyle, Clinton County, Illinois, died, leaving a will, the 6th clause of which was as follows:

"6th. I give, bequeath and devise to my niece, Winefred Langan for life the other half of the residue

of my estate, remainder in fee to the heirs of her body, or in default of such issue, at her death then remainder in fee to her father, mother, brothers and sisters equally, or their heirs taking *per stirpes.*"

The will was duly probated in Illinois and a duly certified copy thereof filed in the Probate Court of St. Louis County on June 26, 1856. At the time of his death, said Tighe owned an undivided one-half interest in a lot at the corner of Fourth and Market Streets in St. Louis. This was embraced within the property mentioned in said 6th clause, so that thereby said Winefred Langan, afterwards Winefred McCabe, was entitled to a life estate therein, and the remainder in fee passed to other parties as provided in said 6th clause of said will.

In 1869, all the parties in interest being before the court, the Circuit Court of the County of St. Louis rendered a decree in partition under which the property was sold and one-fourth of the proceeds, to-wit, $27,859.67, was paid over to Michael J. Hartnett, appointed by the court in said cause, as trustee, "to be by said Hartnett loaned out or invested for the benefit of Winefred McCabe, wife of John McCabe, and all others specified in the will of William Tighe." The court further ordered that, upon receipt of said sum, said Hartnett give bond in the sum of $33,000 to be approved by the court, which he afterwards did, with Constantine Maguire and Catherine Philips, as sureties. Said Michael J. Hartnett remained trustee until his death in St. Louis, in the year 1902. During all this time, Mrs. McCabe continued to reside in Carlyle, Illinois, and Hartnett paid her six per cent per annum on said sum as the supposed income thereof, which he had made, as trustee, under said order of the court. Upon the death of said Hartnett, it proved that he was and for some years had been insolvent and had used the fund for his own purposes. After his death the plaintiff, George W. Hartnett, his son, and Catherine Hartnett, his widow, knowing nothing of the character of the trusteeship of the father and hus-

band, but supposing that he owed Mrs. McCabe said sum, individually, continued to pay the interest thereon to Mrs. McCabe, and in 1904 they gave their notes and encumbered their property in St. Louis to secure Mrs. McCabe. The widow made a note, dated October 26, 1904, to Thomas F. Cook, for $12,859.67, and a deed of trust to James H. Maguire, trustee, to secure this note, which was due five years after December 3, 1904, bearing five per cent per annum before maturity, and eight per cent per annum after maturity, on property at Second and Spruce Streets, which was her individual property, and which she had owned prior to her marriage. The plaintiff, George W. Hartnett, at the same time made a note to said Cook for $15,000, due five years after November 3, 1904, with five per cent interest per annum before maturity, and bearing eight per cent after maturity, to secure said note on an undivided one-half interest in property at Sixth and Walnut Streets. These notes were made in the name of Cook, but were intended as security for Mrs. McCabe, and afterwards the plaintiff, George W. Hartnett, went to Carlyle and tendered them to Mrs. McCabe, but she told him that she would prefer that he keep the securities for her, as his father had done before him. But, afterwards, on the 10th of October, 1905, Mrs. McCabe, accompanied by the defendant Bond, as her attorney, called upon George W. Hartnett in St. Louis and requested him to turn over the securities to her (Mrs. McCabe), which he did, and took from her a receipt therefor, reading as follows:

" (Duplicate)

"Received of George W. Hartnett promissory note of $12,859.67, dated Oct. 26, 1904, to order of Thomas F. Cook, signed by Catharine Hartnett and secured by deed of trust of same date, in which Catharine Hartnett is party of the first part, James H. Maguire party of the second part, and Thomas F. Cook, party of the third part. Also received promissory note of $15,000, dated Oct. 27, 1904, to order of Thomas F. Cook, signed by George W Hartnett and secured by deed of trust of same

date, in which Geo. W. Hartnett (unmarried) is party of the first part, James H. Maguire, party of the second part, and Thos. F. Cook, party of the third part. That these notes, secured by deeds of trust were held by George W. Hartnett as trustee for Winefred McCabe for *cash money of Winefred McCabe* in the possession of George W. Hartnett.

"GEORGE W. HARTNETT,

"WINEFRED MCCABE."

Afterwards, an appraisal of the property was had and the security was found insufficient, and the plaintiff, George W. Hartnett, made another deed of trust on other property, dated November 14, 1905, to Sterling P. Bond, as trustee, and Winefred McCabe, as beneficiary. It conveyed certain real estate in the town of Bridgeton, St. Louis County. It was given as additional security for both the $15,000 note he had previously made and the $12,859.67 note his mother had previously made to Cook and delivered to Mrs. McCabe. The widow, Catharine Hartnett, also at the same time, made a similar deed of trust, as additional security, by which she transferred her homestead and residence at 2909 Washington Avenue in St. Louis. Thereafter, the interest was paid to Mrs. McCabe on both notes, always at the rate of five per cent per annum, after maturity, as well as before, up to May 16, 1911, when the plaintiff, George W. Hartnett, sold his one-half interest in the Sixth and Walnut Streets property for $18,500, and paid the $15,000 note, delivering the money to Mrs. McCabe, and receiving a deed of release executed by her, individually, releasing the deed of trust on the property sold. On May 22, 1911, George W. Hartnett, also sold the property in Bridgeton, and out of the proceeds paid Mrs. McCabe $1,019.67, all that was left after paying prior mortgages thereon, and took her receipt therefor, reading as follows:

"Received, St. Louis, Mo., May 22, 1911, of Catharine Hartnett, ten hundred and nineteen 67/100 dollars, being on account of note for $12,859.67, held by me and

secured by deed of trust on property on northwest corner Second and Spruce Streets, St. Louis, Mo. The above payment on account reduces the amount of note of $12,859.67 to $11,840, drawing five per cent interest per annum from June 3, 1911.

"$1,019.67.          WINEFRED McCABE."

At the same time this payment was made, it was indorsed upon the note, itself, by Mrs. McCabe's attorney. Mrs. Hartnett paid $964.47 interest on her note, at the same time, and took a receipt, which is as follows:

"Received, St. Louis, Mo., May 22, 1911, of Catharine Hartnett, nine hundred and sixty-four 47/100 dollars, being eighteen months' interest in full due me to June 3, 1911, on $12,859.67 note at five per cent per annum. The above interest is for the note from Catharine Hartnett of $12,859.67, being secured by deed of trust on property on northwest corner of Second Street and Spruce Street, St. Louis, Mo.

"$964.47.          WINEFRED McCABE."

Mrs. McCabe also then released the Bridgeton property and Mrs. Hartnett's homestead from her deed of trust securing the note of Mrs. Hartnett's for $12,859.67. This release was also made in her individual capacity. During this transaction, the note for $12,859.67 seems to have been lost or mislaid, as it was never afterwards found. The properties encumbered by the son were conveyed to him by the father several years before, with the verbal understanding that the conveyance was made "for the purpose of looking out for Mrs. McCabe's trust."

Mrs. Hartnett, as devisee of Mrs. Philips, surety on her husband's bond, as trustee, received property sufficient to pay the note she gave Mrs. McCabe, and this property descended to the plaintiffs as Mrs. Hartnett's heirs. But, we find from the evidence that Mrs. Hartnett did not, when she gave said note, or at any time, know of the existence of such bond, or that Mrs. Philips, or she,

as devisee of Mrs. Philips, was in any manner liable thereon.

On June 8, 1914, in a proceeding in the Circuit Court of Clinton County, Illinois, Fred Schlafly was appointed trustee for all the beneficiaries under the 6th clause of the will of said Tighe, and was ordered by the said court to demand and take from Mrs. McCabe all moneys, choses in action, etc., in her hands, amounting to $28,-784.33. He was required to give bond in the sum of $50,000, as such trustee. Upon giving bond and being duly qualified, he took over the said sum, being money and securities, from Mrs. McCabe. George W. Hartnett sent his check to Mrs. McCabe for the interest due July 3, 1914, but it was returned to him by said Schlafly, requesting him to make the check payable to his, Schlafly, as trustee. Hartnett then visited Mrs. McCabe at Carlyle, and she informed him that Schlafly had been appointed trustee, and that it was all right to pay the interest to him, which Hartnett accordingly did, and took Schlafly's receipt therefor, as trustee. Thereafter, the interest was paid by George W. Hartnett to Schlafly, as trustee, until some time in January, 1917, when said Hartnett desired to pay the balance, principal and interest, due on the $12,859.67 note, and secure the release of the deed of trust still on his mother's property, securing said note. It then developed that the note could not be found and was lost and had never been seen since the partial payment of $1,019.43 had been made thereon. Thereupon, on January 10, 1917, the plaintiff, George W. Hartnett, tendered to said Schlafly $351.81 interest at five per cent per annum, and $11,840, principal, in payment of said note, which he claimed was the full amount due, and demanded a surrender of said note and release of the deed of trust securing it. The note being lost, Schlafly could not surrender it, and did not agree that the interest tendered for the time after Mrs. McCabe's death was sufficient. A bond for the lost note was also spoken of, but no agreement was reached.

Thereupon, on January 19, 1917, plaintiffs brought this suit making said Schlafly and all known beneficiaries and claimants under the 6th clause of said will, or their legal representatives, parties by name, and also making all of such beneficiaries and claimants, and all persons representing or claiming under them, as were unknown, parties defendant, as unknown parties under the statute, and caused publication to be made notifying them of the suit, as required by our statutes.

The plaintiffs filed an amended petition, which set up the principal facts substantially as above narrated. Said petition alleged that said Michael J. Hartnett had never been discharged as such trustee, "nor were the plaintiffs herein, as his heirs at law, and successors in said trust, ever discharged from the terms and provisions of said trust created by said decree. That plaintiffs herein, as such trustees, secured the said trust for the use and benefit of said Winefred McCabe during her life, and that under the terms of said trust they are required to pay over to the beneficiaries, defendants herein named, the said principal of said trust and the interest that accrued thereon since the death of said Winefred McCabe."

The petition then alleges in substance that the defendants set up conflicting claims to said sums and take different views of the proper construction to be given the 6th clause of said will. Also, that plaintiffs were not informed that said sums were trust funds under said will, but were deceived in turning over said note and money to Mrs. McCabe, as her individual property; that they are entitled to an accounting from her administrator, defendant, Slater, and also defendant Fred Schlafly, who, as well as Mrs. McCabe, were trustees of their own wrong.

The prayer of the plaintiff's petition was that the court construe said 6th clause in the will of said Tighe, and determine the rights of the parties interested therein, and order distribution of the fund in court accordingly. Also, to decree that said Schlafly account for and

pay into court all such funds paid over to him or in his hands, so that the same may be paid over to persons entitled thereto, as decreed by the court. That plaintiffs have a decree discharging the heirs of said Michael J. Hartnett and the sureties on his bond, as trustee. Also that said decree cancel said note and deed of trust for $12,859.67. Also that plaintiffs recover out of said trust funds reasonable compensation for their services as successors to their father in said trust in paying over said entire fund, and for their attorney's fees and costs, and for other relief.

At the time of the filing of the petition, January 19, 1917, by leave of court, plaintiffs were allowed to, and did pay into court, as a tender and in payment of said note, the sum of $12,211.66, which was afterwards by order of court deposited in the National Bank of Commerce in St. Louis, as a special deposit, drawing two per cent per annum.

Defendant Mary Grace Langan, administratrix, and certain other named defendants, filed answer by their attorneys, Ford & Jones, Bruce A. Campbell and S. P. Bond. They set up in said answer, as a counterclaim against the plaintiffs, in effect, that the property which the plaintiff, George W. Hartnett, made deeds of trust upon to secure Mrs. McCabe and other property, was purchased by Michael J. Hartnett with the trust funds in his hands, from which large profits were made; that such profits belonged to the trust fund in addition to the principal thereof, for which the plaintiffs were liable, and against whom the defendants ask an accounting and judgment therefor. They also alleged in said answer, that the will of said Tighe had been construed by a decree of the Circuit Court of Clinton County, Illinois, in a suit commenced prior to the bringing of the plaintiffs' suit, and that said court had determined that said defendants were the owners of said trust fund, and were entitled to share in said fund under said will in certain proportions, which the answer sets out and which the decree of the lower court determined was correct. That

full faith and credit must be given to said Illinois
court's decree under the Constitution of the United
States. And that the matters in dispute between the
parties in interest as to their shares in said fund had
already been adjudicated by said decree in Illinois.

Defendant, Fred Schlafly, and Fred Schlafly, as
trustee, stated in his answer, that Mrs. McCabe died
October 9, 1916, without ever having any heirs of
her body, and that previous to her death, her father,
mother, brother James Langan, and sister, Catharine
Langan II, had departed this life. It also stated that
the $15,000 note of George W. Hartnett, and the $12,-
859.67 note of Catharine Hartnett, were given to re-
store the trust fund, which had been lost by the original
trustee, Michael J. Hartnett, and were given to Mrs.
McCabe to hold, and she did hold possession thereof,
and preserved the said fund, for whomsoever should
be entitled to it upon her death. That at the Novem-
ber term, 1916, of the Circuit Court of Clinton County,
Illinois, in a proceeding in which all the beneficiaries
under the 6th clause of said will were defendants, and
Mrs. McCabe was plaintiff, said court construed the
will and appointed said Schlafly to take and hold said
funds in possession of Mrs. McCabe, as required by
said will. That said decree was made January 27,
1917. That said defendant, Schlafly, gave bond as re-
quired and took possession of the money and choses
in action constituting said funds of Mrs. McCabe, and
holds them as such trustee. That said court determined
the proportion or interest which all the parties to this
suit had in said funds, and said decree is binding upon
them. That said cause in Illinois was commenced, and
the plaintiffs were informed thereof, prior to the com-
mencement of this suit.

The defendant William Connolly filed a separate
answer, claiming that, as husband and heir of his de-
ceased wife, Catharine Langan II. Connolly, and as
heir of his daughter, Winefred Connolly, both of whom

pre-deceased Mrs. McCabe, he was entitled to four twenty-firsts of said estate.

The answer of the defendant Frank Slater, Public Administrator, claimed that as administrator of the estate of Mrs. McCabe, in this State, he was entitled to $210.49 on account of interest which had accrued on said funds from June 3, 1916, to October 9, 1916, the date of the death of Mrs. McCabe. His answer also took the view that said 6th clause of the will created a vested remainder in the parties named as taking upon the death of Mrs. McCabe, without issue, and if so, Mrs. McCabe, herself, was entitled to two thirty-fifths of said fund, as one of the heirs of her father, mother, brother and sister, who died before she did.

Proper pleadings were filed putting all the various claims of the parties, plaintiffs and defendants, in issue. We have not undertaken to set out even the substance of the language of the different pleadings, but only a bare outline of the material portions thereof. Other facts in evidence or stated in the pleadings may be hereafter referred to in the course of the opinion.

The court below decreed that plaintiffs pay into court $1075.44 (in addition to the amount paid in at the commencement of the suit) less such amount as the Bank of Commerce should pay as interest on said sum on deposit with said bank; that thereupon, the note and deed of trust for $12,859.67 made by Mrs. Catherine Hartnett, the mother of the plaintiffs, should be deemed cancelled and satisfied, and that the heirs of Michael J. Hartnett, and of Catherine Hartnett, deceased, and of Catharine Philips, deceased, surety of the bond of said Michael J. Hartnett, as trustee, also then should be discharged from all liability to any of the defendants in the case; and denied plaintiffs any other relief prayed for. The court decreed against the relief asked against the plaintiffs by the defendants, Mary Grace Langan *et al.*, in their cross-bill; but found and decreed for said defendants, as to the construction of the will, holding that they were entitled to the fund in court under the

6th clause of the will of said Tighe; and that the defendant William Connolly and Kate Mulcahy, took no interest under said will; and that the defendant Frank Slater, Public Administrator, in charge of the estate of said Winefred McCabe, deceased, had no interest in said fund except $207.20, the amount of interest due Mrs. McCabe on Mrs. Hartnett's note, at the time of her death, that is, Mrs. McCabe's death. All the parties appealed, except defendants, Slater and Mulcahy.

I. The first question is whether the tender and payment into court by the plaintiffs of $12,211.66 was sufficient to pay the amount due on the note in controversy. If the note bore interest at only five per cent per annum, *Interest.* after Mrs. McCabe's death, then the tender was sufficient, but, if after that time, it bore interest at the rate of eight per cent per annum, the tender was insufficient. The note in controversy was dated October 26, 1904, and was originally for $12,859.67, due on or before five years from December 3, 1904, with interest at five per cent per annum until maturity, and after maturity at eight per cent per annum. It was secured by deed of trust of even date with the note upon real estate in the City of St. Louis on Second and Spruce Streets, which was the individual property of Mrs. Hartnett, and owned by her before her marriage. It, and another note for $15,000 made by her son, the plaintiff, George W. Hartnett, which was paid several years before this suit was brought, were given to Mrs. McCabe to make good the sum of $27.859.67, which Mrs. Hartnett and her son believed the husband and father, Michael J. Hartnett, had during his lifetime for many years held in trust for and owed Mrs. McCabe, personally and individually. They knew nothing about the terms of the trust or how it arose, or was created, or that any other persons were interested therein.

Mrs. McCabe lived at Carlyle, Clinton County, Illinois. Mrs. Hartnett and her son always paid interest on these notes to her personally, after their maturity, as well as before, at the rate of five per cent per annum.

On May 22, 1911, Mrs. Hartnett paid Mrs. McCabe $1,019.67 (besides interest due to June 3, 1911, at five per cent), reducing the amount due on her note of $12,859.67 to $11,840. She gave Mrs. Hartnett a receipt dated May 22, 1911, for the money so paid, which is set out in our statement of facts, and which concludes as follows:

"The above payment on account reduces the amount of note of $12,859.67 to $11,840, *drawing five per cent interest per annum from June* 3, 1911.

"$1,019.67                    WINEFRED McCABE."

This is an express statement of Mrs. McCabe's in writing, made on May 22, 1911, that by the payment on that day of $1,019.67 there is a balance of $11,840 left due on her note against Mrs. Hartnett, to draw interest from June 3rd following, that is, June 3, 1911, at five per cent per annum, to which date the interest had been paid at the same time. Thereafter, as long as she lived, she and Schlafly, also, after he was appointed trustee by the Circuit Court of Clinton County, Illinois, in 1914, and until her death in 1916, always collected and were paid interest at the rate of five per cent per annum. Although the note was given to Mrs. McCabe for her benefit only, the remaindermen now seek to treat it as given for their benefit also. If so, they must take it as she held it and ratify the act of Mrs. McCabe in changing the interest it originally bore after maturity, to five per cent per annum after June 3, 1911.

We must find this point, therefore, in favor of the plaintiffs and that their deposit in court when they brought the suit was sufficient to pay all that was owing on the note. The lower court was therefore wrong in holding said payment into court was insufficient.

II. Although the note was given to Mrs. McCabe by Mrs. Hartnett, under the impression that it was for her sole benefit, and that she owned the principal of the trust fund, as well as the interest or income thereof which she had always received, still, it was afterwards

turned over to Schlafly, as trustee for the remaindermen, and they are now in court claiming it as a part of said trust fund. Said note (together with the son's note of $15,000, which was paid before this suit was brought) was taken by Mrs. McCabe and given by Mrs. Hartnett to make up the full amount of the trust fund owing by the father. The remaindermen must take it, as Mrs. McCabe received it, as the full amount of the trust fund. No mistake or error is charged or shown to exist as to the amount. Therefore, the decree was right in declaring that the heirs of Michael J. Hartnett and of Mrs. Philips, as surety on his bond, as such trustee, be discharged from all liability upon payment of the amount due upon the note in question, which we hold the plaintiffs have done.

*Ratification.*

IV. The plaintiffs as heirs of Michael J. Hartnett, were not his successors as trustee of the trust fund. 1st: Because, the trust fund had been dissipated, and there was no such trust fund to devolve upon them as heirs. 2nd: The trust fund, being personal property, had it existed, would have passed into the custody of the administrator of said Michael J. Hartnett (had there been one), as bailee, and not to his heirs. [Hook, Admr., v. Dyer, 47 Mo. 214; State ex rel. v. Trust Co., 209 Mo. 472.] 3rd: The plaintiff, George W. Hartnett, voluntarily surrendered the trust fund which he and his mother created into the hands of Mrs. McCabe, several years before her death, and did not claim to hold or administer the same under said will at any time.

*Title of Trustee's Heirs.*

Therefore, the plaintiffs were not entitled to receive any compensation for preserving or restoring the trust fund as successors to their father, as trustee.

IV. Nor were the plaintiffs entitled to any allowance for attorneys' fees or expenses for bringing and prosecuting this suit. It is true, the plaintiffs were obliged to bring the suit in order to secure a valid release of their property from the lien of the deed of trust.

**Counsel Fees.** A foreign administrator has no title to nor right to collect or receipt for a note from citizens of this State and secured upon property in this State. [Crohn v. Bank, 137 Mo. App. 712; Richardson v. Busch, 198 Mo. 187; Naylor's Admr. v. Moffatt, 29 Mo. 126; McCarty v. Hall, 13 Mo. 480; Bartlett v. Hyde, 3 Mo. 490; State ex rel. v. Bruce, 187 Mo. App. 614-15.]

Schlafly, not deriving his powers as trustee from the will of Tighe, the testator, which made no provision for any such trustee, but simply from the order of the Circuit Court of Clinton County, Illinois, had no more title or power to collect and receipt for the balance due on the note and deed of trust in question, than would a foreign administrator. The power of both is derived wholly from the laws of the state where they are appointed, and those laws do not operate beyond the limits of such state. [Curtis v. Smith, 6 Blatch. 537; Scudder v. Ames, 89 Mo. l. c. 522; McPike v. McPike, 111 Mo. l. c. 225-6; and other authorities, supra.]

Before Schlafly could legally collect said note, he should have been appointed trustee by a court in this State. [Curtis v. Smith, supra.]

But, while the plaintiffs could not have legally paid the note to Schlafly, they could have paid it directly to the remaindermen entitled to it, or if there was difficulty or uncertainty in determining who they were, plaintiffs could deposit the money due on the note in court and make all claimants parties to a suit in equity, and ask the court to cancel the note and satisfy the deed of trust, as they did do. As we understand the authorities, including Sandusky v. Sandusky, 265 Mo. 219, relied upon by the plaintiffs, it is only the executor or other parties appointed to carry out the provisions of a will who are allowed counsel fees in suits for the construction of the will. In any event, we know of no case in which the debtor of an estate or those claiming under him, or her, as here, have been held entitled to such allowance, although it was necessary for them to pay the amount due into court and to seek the aid of a court of equity

in relieving their property from the incumbrance of the debt.

This suit was brought, primarily, for the benefit of the plaintiffs and not for that of the defendants. In such cases, counsel fees are not allowable to the plaintiffs, and the lower court was right in so ruling.

V. As to the counterclaim or cross-bill set up in the answer of defendants Mary Grace Langan *et al.*, against the plaintiffs. This counterclaim is based upon the allegations in said answer that plaintiffs' ancestor, Michael J. Hartnett, invested the trust funds in certain real estate from which he or they realized large profits, and which the beneficiaries of said fund are entitled to in addition to the principal of such fund. We have examined the evidence carefully. It shows that said Michael J. Hartnett died without any property. That two pieces of property, which a number of years before his death he conveyed or caused to be conveyed to his son, George W. Hartnett, were largely, if not wholly, used by the latter in paying the $15,000 which he paid to Mrs. McCabe. The evidence does not sustain the claim that said property or any property was purchased by said Michael J. Hartnett with such trust fund, but that he probably spent such fund from time to time in living expenses, and that was one of the reasons, as shown by the evidence, which induced Mrs. Hartnett to mortgage her property and give the note in suit to make good her husband's debt. The lower court was right in finding against the said defendants on their counterclaim or cross-bill against the plaintiffs.

*Profits.*

VII. The next question is one arising between the defendants themselves. The defendant, William Connolly, is the father of Winefred Connolly, and her mother, Catharine Langan Connolly, was a sister of Mrs. McCabe. Both Mrs. Connolly and her daughter, Winefred, died before Mrs. McCabe. William Connolly, therefore, claims an interest in said fund as the heir of his deceased daughter, her death having occurred after that of her

*Remainder:
Heirs as
Purchasers.*

mother. In other words, his contention is that the 6th clause of said will created a vested remainder in the remaidermen therein mentioned, and their heirs, subject to be divested upon the birth of issue to Mrs. McCabe; that Mrs. McCabe never had any children, therefore, said remainder so vested was never divested, and his wife, Catherine Langan Connolly, Mrs. McCabe's sister, took a vested interest in her own right and also took as an heir of her mother and father, who died before she did; that upon his wife's death, her interest descended to his daughter, and his daughter dying before Mrs. McCabe, he inherited her interest. On the other hand, said defendants, Mary Grace Langan *et al.*, assert that said will created no vested remainder in any one during the life of Mrs. McCabe, but only a contingent remainder in such of the remaindermen mentioned in the will (in case Mrs. McCabe died without leaving issue) as were alive at the time of her death, or if dead, in the heirs *per stripes,* of the deceased remaindermen, living at the time of Mrs. McCabe's death. We agree to this contention, and that said William Connolly, therefore, has no rights under said 6th clause of said will. Said 6th clause is as follows:

"6th. I give, bequeath and devise to my niece, Winefred Langan for life the other half of the residue of my estate, remainder in fee to the heirs of her body, or in default of such issue, at her death then remainder in fee to her father, mother, brothers and sisters equally, or their heirs taking *per stirpes.*"

When this will was made, and ever since, the following statutory provisions were in force (1 R. S. 1855, p. 356, secs. 6 and 7; R. S. 1909, secs. 2873, 2874):

"Sec. 6. Where a remainder in lands or tenements, goods or chattels, shall be limited, by deed or otherwise, to take effect on the death of any person without heirs, or heirs of his body, or without issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor.

"Sec. 7. Where a remainder shall be limited to the heirs, or heirs of the body, of a person to whom a life estate in the same premises shall be given, the persons who, on the termination of the life estate, shall be the heirs, or heirs of the body of such tenant for life, shall be entitled to take as purchasers, by virtue of the remainder so limited in them."

Under said Section 7, the remainder to the heirs of the body of Mrs. McCabe, was a contigent remainder, because it "could not be told" who such heirs "would be until her death, when the contingent remainder in fee under the will would vest." [Godman v. Simmons, 113 Mo. l. c. 127-8; Emmerson v. Hughes, 110 Mo. 627.] And under said Section 6, the words "in default of issue at her death," meant without issue living at Mrs. McCabe's death. [Faust's Admrx. v. Birner, 30 Mo. 414; Naylor v. Godman, 109 Mo. 543; Yocum v. Siler, 160 Mo. 281; Gannon v. Pauk, 200 Mo. l. c. 82.] Construed in view of said statutory provisions and the intention of the testator, which rides down every other consideration in construing a will, said 6th clause means that the devise is to Winifred Langan for life, remainder in fee to her descendants living at her death, or if she have no decendants living at her death, then the remainder in fee to her father, mother, brothers and sisters, if then living, or if dead, to their heirs, taking *per stirpes*. Mrs. McCabe never had any children nor their descendants living at the time of her death, but if she had had children or their descendants then living, they would then have taken the fee and her father, mother, brothers and sisters, or their heirs *per stirpes* would have taken no title whatever. Their rights and title were wholly contigent upon Mrs. McCabe's dying without leaving descendants, which could not be ascertained until she died, and, consequently, the estate of her father, mother, brothers and sisters, or their heirs *per stirpes*, was a contigent remainder and did not vest during the lifetime of Mrs. McCabe, in any of them, and only vested in such of them as were living at the time

of her death.   [Godman v. Simmons, 113 Mo. 127-128; Dickerson v. Dickerson, 211 Mo. 483; and other authorities, infra and supra.]

Therefore, neither Mrs. Connolly, nor her daughter, as her heir, took anything under said 6th clause which would pass to their heirs by inheritance, because they died before Mrs. McCabe.   [Dickerson v. Dickerson, 211 Mo. 483; DeLassus v. Gatewood, 71 Mo. 380; Emmerson v. Hughes, 110 Mo. 627; Buxton v. Krueger, 219 Mo. l. c. 240.]

Indeed, the remainder to the father, mother, brothers and sisters, *or their heirs per stirpes*, was subject to another contingency besides that of Mrs. McCabe dying without leaving issue—for this reason: The father, mother, brothers and sisters were only to take the remainder in case they were living at the time of Mrs. McCabe's death, because if they were then deceased, their heirs were to take their portion *per stirpes*, not as heirs by descent, but as purchasers under the will. [Buxton v. Kroeger, 219 Mo. l. c. 256-7.]   At the time the will was made, it was impossible to say that any such remaindermen would survive Mrs. McCabe, and no one was to take as such remaindermen who did not survive her.   Consequently, for this reason, too, such remainder was contingent, and vested in none of such remaindermen except those who survived Mrs. McCabe. [Emmerson v. Hughes, 110 Mo. 617; Emison v. Whittlesey, 55 Mo. l. c. 258; also authorities, supra.]

The remainder, being thus doubly contingent and taking effect or vesting only upon the death of Mrs. McCabe, in such of the remaindermen or their heirs as were then living, the heirs who were to take the deceased remaindermen's portion under said will were the persons who were, or would have been, the heirs of such deceased remaindermen at the time the remainder vested, or at the date of Mrs. McCabe's death.   A deceased heir of such remaindermen, of course, could take nothing, because not in existence when the estate vested.   As no one is heir to the living, so it may be

said, that the dead are heirs to no one. At the date of Mrs. McCabe's death, Mrs. Connolly and her daughter, both being dead, the daughter could not, and did not, take as her mother's heir under said will, and she could transmit nothing by inheritance to her father and he was not the heir of his wife. Who, then, were or would have been the heirs of Mrs. Connolly at the time of her (Mrs. McCabe's) death, her descendants all then being dead? Our Statute of Descents and Distributions Section 332, R. S. 1909, then as now, provided, as to the course of descent, as follows:

"First, to his children or their decendants in equal parts; second, if there be no children or their descendants, then to his father, mother, brothers and sisters and their descendants in equal parts; third, if there be no children, or their descendants, father, mother, brother or sister, nor their descendants, then to the husband or wife; . . . "

Under the plain language of the statute, therefore, Mrs. Connolly's surviving brothers, and the living descendents of her brother then dead, would be her heirs at the time of Mrs. McCabe's death, because Mrs. Connolly then had no living decendants, and her father and mother, and one of her brothers (leaving descendants) were dead. Consequently, the share Mrs. Connolly would have taken had she been alive when Mrs. McCabe died, passed under said 6th clause to her surviving brothers and the living decendents, *per stirpes,* of her brother then deceased, and not to her husband. We must, therefore, rule as did the circuit court, that defendant, William Connolly, was entitled to no part of the fund in controversy.

VII. Mrs. McCabe had nothing but a life estate under said will and could inherit nothing from her father, mother, brother or sister, whose death preceded her death, for the reason that their interests being contingent upon surviving her, never took effect because they died before

Heirs of
Life Tenant.

she did. Consequently, Kate Mulcahy, as Mrs. McCabe's devisee, received nothing, and the public administrator in charge of the estate of Mrs. McCabe was entitled to nothing, except unpaid interest up to the death of Mrs. McCabe, which the court allowed him.

VIII. At the time of Mrs. McCabe's death, both her father and mother and one brother and one sister, and her descendants, were dead, leaving surviving her only her brothers John, Peter and William, and the children of her deceased brother James. Therefore, John, Peter and William were each entitled to one-fourth interest in the trust fund, and the remaining fourth vested in the children of James, as found and decreed by the court below.

Interest of Remaindermen.

IX. There are many questions raised between the respective parties in this court, as to the validity of the decree of the Circuit Court of Clinton County, Illinois, construing said clause of said will, but it is not necessary for us to discuss or pass on those questions, because we have construed said will and determined the rights of the parties thereunder, the same as did the said Illinois Circuit Court, and the parties defendant, in favor of whom we have so decided, affirm the validity of said decree in Illinois in all things.

Illinois Decree.

X. We, therefore, reverse the judgment of the circuit court herein, and remand the case with directions to modify its judgment herein, so as to decree said note and deeds of trust of said Catharine Hartnett, originally for $12,589.67, mentioned in the petition, fully paid, satisfied and cancelled, without any further payment thereon by the plaintiffs than the money already tendered and paid into court by them, and also, that said trust is fully paid and satisfied, and the heirs of said Michael J. Hartnett, the trustee, and Catherine Philips and Constantine Maguire, sureties

Decree.

on his bond, and their heirs, be fully discharged from all further liability on account thereof. All court costs should be decreed against the defendants, and be paid out of said fund in court.

Defendant Schlafly has no right as trustee appointed by the Illinois court to collect or receive said fund, and the judgment below is erroneous in authorizing him to do so. Still, the parties defendant in interest make no objection here to said decree for that reason, but consent thereto, and consequently, it will be binding upon them, so far as plaintiffs are concerned. Schlafly may be considered as appointed by the lower court as the successor of Michael J. Hartnett, trustee, and, as such, authorized to receive and pay out said funds as directed. With this understanding, we do not disturb the ruling of the lower court as to said Schlafly receiving and disbursing said fund, as trustee. In all other respects, except as above indicated, the decree of the circuit court is affirmed.

*Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur, except *Woodson, J.,* absent.