CASE 57—PETITION EQUITY—MARCH 7.

# Goff, &c., v. Anderson.

### APPEAL FROM CLARK CIRCUIT COURT.

1. CURTESY—A CHILD IS COMPLETELY BORN WHEN DELIVERED, or when it becomes external of the mother, although the umbilical cord has not been cut; and if not at that instant dead, it is to be regarded as "born alive" within the meaning of the statute fixing the husband's right to curtesy.

2. SAME.—An effort upon the part of the child to breathe, although it has not strength to breathe enough to establish circulation of blood independent of circulation derived from the mother through the umbilical cord, is sufficient to show that life is not extinct.

3. SAME—EVIDENCE.—When the attending physician is called upon to testify long after the birth of the child, his opinion formed at the time from actual observation and examination, and distinctly stated by him as a witness, ought not to be rejected, although the reasons for that opinion given by him in his testimony may not be entirely convincing.

W. M. BECKNER, GEORGE B. NELSON FOR APPELLANTS.

A child is not born alive unless there is an independent circulation of the blood of the child after complete birth, and by "independent circulation" is meant a circulation maintained by the child's own vitality independent of that of the mother. (Doe v. Killen, 5 Houst., 16; 2 Black., 127; Beck's Med. Jur., vol. 1, pages 412, 416; Wharton & Stille, sec. 128; Reg. v. Wright, 9 Car. & P., 754 (38 E. C. L., 322), Rex. v. Enoch, 5 Car. & P., 539 (24 E. C. L., 446); 1 Chitty's Black., side pages 126-7.)

L. HATHAWAY FOR APPELLEE.

A child is born alive whenever it gives signs of life after it is completely external to the mother. It is not necessary to constitute live birth that it should give signs of life after the separation of the umbilical cord. (Tidy's Legal Medicine, vol. 3, pages 154, 155; Ewell's Med. Jur., p. 111; Taylor's Med. Jur., p. 111; Taylor's Med. Jur., American edition, by Reese, pages 665, 666, 667 and 672; Traill's Med. Jur., p. 47; Wharton's American Crim. Law, vol. 1, sec. 874; Beck's Med. Jur., vol. 1, pages 356, 357 (notes at foot), and page 448 (10th ed.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

The single question in this action between the heirs-

at-law of M. A. Anderson, appellants, and her surviving husband, appellee, claiming as tenant by curtesy land owned by her, is whether there was issue of the marriage born alive.

Evidence of statements on the subject made by her after date of the child's birth being merely hearsay, and consequently incompetent, the only testimony to be considered is that of the husband and attending physician.

The former states he was present in 1853, right over the child when born, heard it breathe and make a murmuring noise, saw some motion of its arms and feet, and that it was born alive. Though objected to, his evidence is competent; for relating only to the state of the child when born, it does not come within any exception mentioned in section 606, Civil Code, to the rule contained in section 605, that a person is competent to testify for himself.

Dr. Combs states he was the attending physician, and that the child was born alive and breathed several times, though not living over one or two minutes. On cross-examination, he said the breathing was not full inspiration at any time, but a very distinct and labored effort to breathe—a sort of struggling or gasping to get a full inspiration; that the child did not have strength to breathe enough to establish circulation of blood independent of circulation derived from the mother through the umbilical cord; and that there was no perceptible breathing when the cord was cut. He further stated it was a case of foot presentation, where there is always danger of the cord becoming compressed, and circulation stopped before

the child's head can be delivered, and that if the child in question had been detained five or ten minutes longer there would have been no effort to breathe.

Whether a child was born alive is sometimes a close question, difficult for those not present to decide from the account given by those who were. On the other hand, there are particular signs which all agree show the fact indubitably one way or the other. And it may happen that a person present reaches a correct conclusion the child was born alive, without being able after a long period of time, though a physician, to recollect fully and precisely all the symptoms, or to give satisfactory reasons for such conclusion.

In this case the attending physician was called on to testify about thirty-five years after birth of the child; and even if the reasons given by him had not been entirely convincing, still his opinion, formed at the time from actual observation and examination, and now distinctly stated, could not be safely or reasonably rejected, especially as he has not been impeached nor contradicted, but sustained by evidence of the only other witness then present. But the evidences of live-birth mentioned by him do, we think, show the fact independent of the positive opinion on the subject of himself and appellee; for if, as all know, breathing by a child first born is a true sign of life, an effort to breathe, or, in the language of Dr. Combs, a gasping or struggling to get a full inspiration, is equally convincing life is not yet extinct, just as a cry of pain, though ever so feeble, shows as conclusively that death, however near, has not actually come, as would the voice of a stentor.

Vol. 91—20.

But it is argued that because the child may not have been living when the navel cord was cut it was not, in the meaning of the statute, born alive. Born, as ordinarily understood, and in fact, means brought forth, and a child is completely born when delivered, or expelled from and becomes external of the mother, whether the placenta has been separated, or the cord cut or not. (See Legal Med., by Tidy, vol. 2, 154; Ewell Med. Jur., 111.) And if not at that instant dead, it is to be regarded as born alive for every legal purpose whatever. To give the word as used in the statute a different meaning would be simply a perversion without reason or excuse.

Counsel has cited the case of Doe v. Killen, 5 Houst., 14, where the judge, upon trial of an action of eject-ment between the surviving husband and heirs-at-law, charged the jury that, to find for the former, they must believe the child was born alive, having an in-dependent circulation and existence of its own, apart from the mother, and by force of the child's own in-herent vitality; and though not distinctly so stated, it may be inferred the judge intended such independ-ent circulation should exist after the navel cord was cut. We have been referred to no other authority for such view, and we can not sanction it; for a child, when delivered, is either alive or dead for all pur-poses, and to make its legal existence date from the time a physician may, in his wisdom, see proper to cut the navel cord is without reason, and contrary to the plain meaning and intent of our statute.

We think the court properly found the child in ques-tion was born alive, and that the appellee was entitled as tenant by curtesy to the land owned by his wife.

Judgment affirmed.