# Myers et al. v. Bates et al.

Oct. 20, 1942.

Rodes K. Myers, L. B. Jones and G. D. Milliken, Sr. for appellants.

Maurice D. Burton for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Appellees brought this action in the Warren Circuit Court against appellants to quiet title to a certain tract of land in Warren County, Kentucky, alleging, in substance, that they are the owners of the land by inheritance through Nancy Virginia Bates Edmunds, the first wife of James Edmunds. She died in 1893. Appellants are claiming title to the land by virtue of a deed executed in April, 1914, by James Edmunds and G. W. Sledge to Emma Myers Edmunds, the second wife of

James Edmunds, whom he married in 1895. No children were born to either of these marriages. Appellees aver that James Edmunds and Sledge had no title to said land and no right to convey same to Emma Edmunds because the title to said land was in the heirs of the first wife, Nancy Virginia Edmunds, who received title to the land by certain deeds made in 1875 and 1876, or thereabout.

It is not necessary for us to discuss the title of Nancy Virginia Edmunds, since it is conceded by appellants, and argued in aid of their claim, that since Nancy Virginia Edmunds obtained title to the land before the passage of the Weissinger Act in 1894, c. 76, and no child born to her marriage, James Edmunds, her husband, inherited no interest in or right or title to her land and the title thereto upon her death immediately vested in her heirs, but insist that James Edmunds acquired title to the land by adverse possession and was vested with fee simple title thereto in 1914 when he conveyed the land to his second wife, Emma Edmunds, through whom appellants claim title and that Emma Edmunds remained in adverse possession of the land until her death in 1937. It appears that Sledge joined in the deed with Edmunds because of a mortgage, or deed treated as a mortgage, that Edmunds had theretofore executed to him on the land to secure a debt. Appellants rest their claim solely upon adverse possession, as indicated above, which is the only question presented for our consideration.

Appellees stated in their petition, and so contend in their brief, that James Edmunds remained on the land after the death of his first wife because of a curtesy interest for life as the surviving spouse of Nancy Virginia Edmunds and that they permitted Emma Edmunds to remain upon the land from the death of James Edmunds in 1922 until her death in 1937 because they did not want her to be without a home.

It is conceded by all parties that the marriage of James Edmunds and Nancy Virginia Edmunds, and the acquisition of title to the land by the latter, occurred before the passage of the Weissinger Act, Section 2132, Kentucky Statutes, and that there was no issue born alive to said marriage. These facts are conclusive that upon the death of the wife Nancy Virginia Edmunds, James Edmunds acquired no right as tenant by the curtesy in his wife's land and had no right to remain in possession and use of the land by the curtesy, as contended

by appellees. Shepard v. Browning et al., 156 Ky. 194, 160 S. W. 950; Goff et al. v. Anderson, 91 Ky. 303, 15 S. W. 866, 11 L. R. A. 825, and cases therein cited. It is also admitted that James Edmunds remained on the land after the death of his first wife and used and cultivated it without any question or objections being made by the wife's heirs or anyone. Also, in May, 1894, soon after the death of Nancy Virginia Edmunds, James Edmunds mortgaged the land to M. H. Sledge to secure a debt of $140 and in December, 1894, Edmunds deeded the land to G. W. Sledge, which apparently was later treated as a mortgage. This use, occupancy and mortgaging of the land continued uninterrupted or without objections by anyone, and in April, 1914, Edmunds conveyed the land to his second wife, Emma Edmunds, and they remained on the land, still using it as their own, until the death of Edmunds in 1922, and the widow Emma Edmunds continued in possession of the land until her death in 1937.

Four witnesses testified for appellees, but appellants offered no evidence but stood upon the records and admitted facts. J. P. Bates testified that four or five years after the death of James Edmunds he and his mother went to see Emma Edmunds regarding the possession of the land and they found her "living" with one Georgia Sledge and Mrs. Edmunds stated that she was going to move back to the farm the next day. This evidence was clearly incompetent under Section 606 of the Civil Code of Practice (Emma Edmunds being dead) had proper exceptions been saved thereto, but conceding that its incompetency was waived, still it is too indefinite to show whether or not Emma Edmunds had deserted the farm and taken up her abode or place of residence with Mrs. Sledge or whether she was there temporarily, or whether or not she still had possession of the land by tenant or otherwise. Another witness testified that at one time James Owens was interested in the purchase of the property but he did not purchase it due to the fact that James Edmunds recognized that he had no salable title to the property. James Owens did not testify in the case, and the statement of the witness amounts to nothing more than an opinion or conclusion as to Owens' reason for not purchasing the property. There is other evidence to the effect that it was "generally regarded" in the neighborhood that James Edmunds did not have a salable interest in the property. The opinion of the neighbors or rumors does not amount to

evidence that Edmunds did not claim to have salable title to the property, and this is particularly true since it is contrary to the acts and conduct of Edmunds in the exercise of ownership, as set out above.

We do not think that the meager evidence of appellees is sufficient to overcome or even render reasonably doubtful the record evidence and admitted facts in favor of appellants. If James Edmunds had merely resided on the land and cultivated it without mortgaging or conveying it, appellees' contention would be more plausible. We cannot imagine a more positive and overt act of exercise of ownership of land than to execute mortgages on it and even convey it in fee by deed of general warranty. It is shown by the record that all of the mortgages and deeds referred to herein were recorded in the clerk's office of the Warren County Court which was notice to appellees that James Edmunds was exercising rights of ownership of the land in the highest degree. Conceding that appellees might have thought that Edmunds was occupying the land by the curtesy, it surely could not be contended that they thought that he had the right to encumber the land by mortgaging it and even conveying it in the manner stated above.

To summarize, we have this chain of record facts and circumstances: James Edmunds, without any curtesy right in the land of his first wife, remained thereon using and cultivating it as his own and twice mortgaging it previous to 1914 when he conveyed it in fee simple to Emma Edmunds; he continued to live on the land with Emma Edmunds the remainder of his life, eight years after the execution of the deed, without interruption or objections; after his death Emma Edmunds retained possession of the land until her death, which occurred 14 years and 11 months after the death of James Edmunds.

We are constrained to the conclusion, therefore, that the great preponderance of the evidence tends to show that James Edmunds claimed, used and occupied the land in question adversely from the time of the death of his first wife in 1893 to the time of the execution of the deed in 1914, a period of about 21 years. And furthermore, if it should be conceded that James Edmunds had not acquired title to the land by adverse possession at the time of the execution of the deed to Emma Edmunds, we are confronted with the fact that Emma Edmunds held the land adversely under claim of title by virtue of

said deed from 1914 until her death in 1937, a period of approximately 23 years. This alone would be sufficient to vest her with title to the land by adverse possession.

For reasons indicated, the judgment is reversed and remanded for proceedings consistent with this opinion.