## H. R. RILEY, Trustee, Appellant, v. CLYDE M. KIRK, et al., Respondents.

In the Kansas City Court of Appeals, April 30, 1923.

1. **ESTATES: Wills: Remainders: Construction: Law Favors Vested Estates, and Where There is Doubt as to Whether a Remainder is Vested or Contingent, Courts Will Construe It as a Vested Estate.** The law favors vested estates, unless a contrary intention is clearly manifested in the grant, and when there is a doubt as to whether a remainder is vested or contingent, the courts will construe it as a vested estate.

2. ————: ————: ————: ————: **Adverbs of Time Such as ''After,'' ''When,'' etc, Do Not of Themselves Create a Contingent Remainder.** Adverbs of time such as "after," "when," etc., do not of themselves create a contingent remainder, but refer rather to the time the enjoyment of the estate is to commence.

3. ————: ————: ————: ————: **Absent Anything in Will, Either Express or Implied, That Testator Intends Title to His Bounty is to be Postponed, Conclusively Presumed That Gift Vests at His Death.** In the absence of anything in the will showing, either expressly or by implication, that testator intends that the title to his bounty is to be postponed, it is conclusively preeumed that his gift is to vest at his death.

4. ————: ————: ————: ————: **Intention as to Whether Gift by Remainder is Vested or Contingent is to be Gathered from Entire Will.** The question whether a remainder is vested or contingent is not to be arbitrarily determined solely and alone by hard and fast rules which have become accepted guides in the construction of gifts or legacies where there is nothing in the way of guidance

in the language creating the grant or gift, but the object to be attained is to ascertain the intention of the testator as gathered from the entire instrument, and to carry that intention into effect.

5. ———: ———: ———: ———: **To Give Effect to Intention of Testator as Expressed in Will, Words Used Therein Are to be Given Natural and Ordinary Meaning.** To discover and give effect to the intention of the testator, as expressed in his will, giving the words employed therein their natural and ordinary meaning is of controlling importance.

6. ———: ———: ———: ———: **While Adverbs of Time Such as "When," "After," "Thereafter," do not Postpone Vesting of Estate, Such Expressions Are Not Necessarily Limited to That Meaning, Provided There Are Other Expressions in Will Allowing a Wider Meaning.** While adverbs of time such as "when," "after," "thereafter," etc., do not postpone the vesting of an estate, but refer to the time when it may be taken possession of and enjoyed, yet such expressions are not necessarily limited to that meaning, provided there are other expressions in the will which clearly allow them a wider meaning.

7. ———: ———: ———: ———: **Power Given to Expend a Part or All of Fund, if Necessary to Support Widow, Did Not, of Itself, Prevent Gift from Being a Vested Remainder.** Where testator provided that the income from a trust fund should be for his widow's use during her natural life, and after her death to a trustee who was to divide the fund or its residue among his children, or their heirs, the mere fact that power was given to expend a part or all of the fund, if necessary to properly support the widow, does not, of itself prevent the gift from being a vested remainder.

8. ———: ———: ———: ———: **Will Giving Remainder to Children or Their Heirs as Heirs of Testator, Held to Create a Contingent Remainder in Children of Testator.** Where testator set apart one-third of his personalty for the use and benefit of his widow and gave the other two-thirds to his children or their heirs, and devised certain real estate to each child and created a trust fund of personalty for benefit of his widow, even to the extent of expending the *corpus* of the fund itself, which trust fund was to be in lieu of dower, and provided that after death of widow the trustee "shall divide the same or its residue, among my children or their heirs, giving to each such share as he or she would take as my heir," *held* the intention of testator was that the fund or what remained unexpended for use of widow was to be kept for and go to those who were of testator's blood and not elsewhere, and his children's interest therein was in contingent remainder.

Riley v. Kirk.

Appeal from the Circuit Court of Clinton County.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*Daniel H. Frost* for appellant.

*R. H. Musser* for respondent.

TRIMBLE, P. J.—Plaintiff, as the present trustee in charge of a trust fund created by the will of William Kirk, deceased, brings this action to construe the trust clause in said will in order that he may know to whom he should distribute the same, now that the object of the trust has been accomplished.

William Kirk died, testate, July 1, 1887, leaving his widow, Eliza A. Kirk, and three children, Theophilus Kirk, William T. Kirk, and Eva K. Thompson. His will was duly probated. Theophilus Kirk was made the executor thereof and duly administered and settled said estate.

The will directed the executor to collect all debts due the estate, to convert all personal property into cash (except books, wearing apparel and furniture bequeathed to the widow in the 5th section of the will), and after the payment of debts, the executor was directed to "set apart for the use and benefit of my wife, Eliza A. Kirk, one-third of the residue of money so realized; and the remaining two-thirds he shall distribute equally among my children or their heirs."

The will then devised certain parcels of real estate therein described to each of testator's children respectively.

In the 5th section of his will, testator gave to his wife, Eliza A. Kirk, the books, wearing apparel and furniture hereinbefore mentioned, and then directed that "in addition to the provisions made for her in this and the preceding parts of this instrument, and in lieu of dower in my lands, I have created and set apart for her use

and benefit á trust fund as will more fully appear in the next succeeding section of this instrument.''

In the next succeeding section of said will (section 6), testator appointed his son, Theophilus Kirk, ''trustee for the following purposes.'' Here followed directions to the trustee to collect into one fund all the money mentioned in his will and out of same to pay to the authorities of the Methodist Episcopal Church, for Home and Foreign Missions, the sum of $1000. The will then provided that—

''All the residue of money collected by the said trustee . . . together with the proceeds of the sales of property set apart to my wife by the first section of this instrument, my said trustee shall hold in trust, for the use and benefit of my wife, Eliza A. Kirk, during her natural life.

He shall invest the same in such manner as shall seem to him to be most advantageous, and shall devote the issues and profits thereof to the support of my said wife; provided that if at any time, such income and profit should not be sufficient for the comfortable support and maintenance of my said wife, then the trustee shall apply such a part of the principal as may be needed, for such comfortable support and maintenance.

''After the death of my wife and after all of said trust funds shall have been collected, the trustee shall divide the same, or its residue, among my children or their heirs, giving to each such share as he or she would take as my heirs, and this trust shall cease and determine.''

As such trustee, Theophilus Kirk collected the whole of said trust fund and continued to execute the trust and apply it as therein directed until his death on November 7, 1921, at which time the plaintiff herein, H. R. Riley, was appointed trustee as his successor. ·

Theophilus Kirk died, testate, on November 7, 1921, leaving his widow, Adellah G. Kirk, and the following as his only heirs: His children, Clyde M. Kirk, Eugenia Young, Camilla Kirk, Halkaline Kirk, Lyman T. Kirk, Robert M. Kirk, and two grandchildren, Paul Cowgill and

Clyde Cowgill, only children of a deceased daughter, Evalina Kirk Cowgill.

In his will, Theophilus Kirk bequeathed to his wife, Adellah G. Kirk, all his personal property of whatsoever character and description to be hers absolutely. He appointed her his executrix and she duly qualified and settled the said estate.

Eliza A. Kirk, the widow of William Kirk, died on the 2nd day of February, 1922, and at her death the trust fund in the hands of the trustee amounted to approximately $20,000, which the trustee now desires to distribute.

The question the trustee asks is: Who is entitled to the one-third of said trust fund which ould have gone to Theophilus Kirk had he outlived his mother, Eliza A. Kirk? Does it go under the will of Theophilus Kirk to his widow, Adellah G. Kirk, as the sole legatee of his personalty, or does it go to the children and heirs of said Theophilus Kirk? The circuit court held that it went to the latter and not to Theophilus Kirk's widow as legatee of his personalty. Plaintiff, however, maintained that the trust clause of William Kirk's will created a vested remainder in William Kirk's three children; and that upon the death of Theophilus Kirk, he having a vested remainder in one-third of said trust fund, it passed under his will to his widow, Adellah G. Kirk, as the sole legatee of his personalty, instead of to his heirs.

Plaintiff invokes the well-established rules that the law favors vested estates; that estates shall be held to vest at the earliest possible period unless a contrary intention is clearly manifested in the grant, and that no remainder will be construed to be contingent which may, consistently with the intention of the creator of the estate, be deemed to be vested. [Tindall v. Tindall, 167 Mo. 218, 225.] And, in support of his contention, plaintiff urges that the will gave to each of testator's three children the *present capacity* to take in possession on the very day testator died, had Eliza A. Kirk also died on that day. There is no question but that the law favors

213 M. A.—25

vested estates and when there is a doubt as to whether a remainder is vested or contingent, the courts will construe it as a vested estate. It is also well settled that adverbs of time such as "after," "when," etc., do not of themselves create a contingent remainder but refer rather to the time the *enjoyment* of the estate is to *commence*. [Chew v. Keller, 100 Mo. 362, 368.] And in the absence of anything in the will showing, either expressly or by implication, that testator intends that the title to his bounty is to be postponed, it is conclusively presumed that his gift is to vest at his death. [Henderson v. Calhoun, 183 S. W. 584, 586; 2 Underhill on Wills, sec. 861.]

However, the question presented by the trustee is not to be arbitrarily determined *solely and alone* by hard and fast rules which have become accepted guides in the construction of gifts or legacies where there is nothing in the way of guidance in the language creating the grant or gift. The object to be attained is to ascertain the intention of the testator as gathered from the entire instrument, and to carry that intention into effect. [Doneghy v. Robinson, 210 S. W. 655.] Of course, in doing this, no positive rule of law can be violated. "The modern doctrine is that in deeds, as well as in wills, the intention of the maker as manifested in the instrument itself is to be effectuated unless in contravention of some positive rule of law." [Tindall v. Tindall, 167 Mo. 218, 224.] To discover and give effect to the intention of the testator, as expressed in his will, "giving the words employed their natural and ordinary meaning, is of controlling importance in the determination of the matter under consideration." [Deacon v. St. Louis, etc., Trust Co., 271 Mo. 669. 684.] We may very well concede the above-mentioned general principles governing the question of whether a bounty is a vested or contingent remainder; and they should be applied and govern in this case, unless there is in the particular will something that takes the matter out of their application and control. For instance, had Eliza A. Kirk died on the day of testator's death or shortly thereafter, or at any time before

Theophilus Kirk died, the mere fact that by the terms of the will the capacity was created in Theophilus Kirk to take one-third of the fund the enjoyment of which was to be entered into upon Eliza A. Kirk's death does not, of itself and regardless of every other consideration, make the gift a vested remainder in Theophilus Kirk. As stated in 23rd R. C. L., sec. 27, p. 498, it has been "incorrectly said that a remainder is vested where there is a person in being who has a present capacity to take in remainder if the particular estate be then presently determined, otherwise the remainder is contingent. But this definition is not sufficiently comprehensive." Again, while it is true that adverbs of time such as "when," "after," "thereafter," etc., do not postpone the vesting of an estate but refer to the time when it may be taken possession of and enjoyed, yet such expressions are not necessarily limited to that meaning provided there are other expressions in the will which clearly allow them a wider meaning.

So, on the other hand, the mere fact that power was given to expend a part or all of the fund, if necessary to properly support the widow, does not, of itself, prevent the gift from being a vested remainder, since, if that were all the provision to be relied upon by defendants, the same might perhaps vest, leaving to be enjoyed whatever amount remained undisposed of under the power at the expiration of the particular estate. [Woodman v. Woodman, 89 Me. 128, 136; Dana v. Dana, 185 Mass. 156, 160; Smith v. Winsor, 239 Ill. 567; Hawkins v. Bohling, 168 Ill. 214, 220.]

By what we have said in the foregoing we mean to say that the solution of the question presented is not to be reached in this case by the mere application of rigid and fixed rules regardless of any expressions in the will which manifest an intention in the testator contrary to that maintained by the trustee. And so, although the various matters hereinabove adverted to do not themselves determine the question, yet they may not be entirely without effect when considered along with other

expressions in the will with which they appear to harmonize and agree.

It will be noticed that in the first section of the will, testator set apart one-third of his personalty for the use and benefit of his widow and gave the other two-thirds to his children or their heirs; that he then devised certain real estate to each of his children; and that he then created the trust fund of personalty involved herein and placed it in the hands of a trustee to be used for the benefit of his widow, even to the extent of expending the *corpus* of the fund itself, if that be necessary to take care of her. Such trust fund was to be in lieu of dower, thereby relieving the land he had devised to each of his children of that burden or interest. The will then provides that—

"After the death of my wife and after all of said trust funds shall have been collected, the trustee shall divide the same or its residue, among my children, *or their heirs,* giving to each such share as he or she *would take as my heir,* and this trust shall cease and determine." ·

There is nowhere else in the will any provision for the bestowal of the gift upon his children, so that the bestowal of the gift and the time it is to be enjoyed are contained in one and the same expression· We think the intention of the testator is manifest that the fund, or what remained unexpended for the use of his wife, was to be kept for and go to *those who were of testator's blood* and not elsewhere. In other words, the will, in effect, though not in express words, means that if any of testator's children are dead at the time the trustee is to divide the fund, then the trustee is to give the portion that would have gone to the dead child, had he lived, to such dead child's heirs, "giving to each such share as he or she would take *as my heir."* That is to say, the heirs of such dead child are to take *as heirs of testator,* or as purchasers under the will and not by descent from their parent. The testator contemplated that one or more or all of his children might be dead when the death of his wife occurred, and in that event, he wanted *his will*

to give the fund to the heirs of each deceased child *"as my* (testator's) *heir."* As thus phrased he meant that it should go to the class designated and not by any mischance to some one else, as it well might do, if the will gave a present title to the fund to the children at testator's death.

Such construction is in harmony with the terms of the will and does not ignore any expression or provision thereof.

The wording of the will in this case, while not identical with that in Owen v. Eaton, 56 Mo. App. 563, is, in our view, similar in legal effect. In that case the devise was to the widow for life and at her death to testator's son, "Lawson Eaton or his heirs, if he should not be alive." While the words "if he be alive" or "if he should not be alive" are not in the will in the case at bar, they are implied by what the will does say; and the provision that the fund at death of wife should go to testator's children, *or* their heirs, they to each take as *testator's* heir, would seem to eliminate from contemplation of the provision such of testator's children as were dead at the time of the widow's death as in the Owen case. In Tillman v. Davis, 95 N. Y. 17, the devise, after the determination of the husband's particular estate, was to certain persons, naming them, "the heirs of any or either of the foregoing persons who may die before my said husband to take the share which the persons so dying would have taken if living." It was therein "held to be immaterial whether Davis took a vested or contingent interest, because, whatever it was, it terminated at his death. In that event, says the court, it is quite clear that his heirs were to take by substitution in his place under the will of the testatrix." [Chew v. Keller, 100 Mo. 362, 372.] It seems to us that this is what the will provides in this case. We entertain the view that the judgment should be affirmed. It is so ordered. All concur.