KNOX COLLEGE, an Illinois corporation, J. R. Clagett, Trustee under the Last Will and Testament of Alice Dean Swobe, Deceased, and Deane Green Anderson, Plaintiffs-Respondents,

v.

The JONES STORE CO., a Delaware Corporation, Defendant-Respondent,

The First National Bank of Kansas City, as Successor Trustee under the Trust Deed of Frances M. Dean, dated February 25, 1925, et al., Defendants on Interpleader-Respondents,

The First National Bank of Kansas City and Barret S. Heddens, Jr., Cotrustees of a Trust Created by Mason L. Dean, Defendants on Interpleader-Appellants,

and

Helen Dean Sullivan, John Joseph Fennelly, and Lana Hensley Fennelly, Guardian of John Joseph Fennelly, III, James Bush Fennelly and Elizabeth Fennelly, Minors, Defendants on Interpleader-Appellants.

No. 51846.

Supreme Court of Missouri, Division No. 1.

Sept. 12, 1966.

Motions for Rehearing or to Transfer to Court En Banc Denied Oct. 10, 1966.

Joseph E. West, Galesburg, Ill., J. R. Clagett, Kansas City, for respondents, Stuart, Neagle & West, Galesburg, Ill., Kemp, Koontz, Clagett & Norquist, Kansas City, of counsel.

John B. Gage, William H. Leedy, Kenneth V. Butler, Kansas City, for appellants, Helen Dean Sullivan and others, Gage, Hodges, Park & Kreamer, Kansas City, of counsel.

Menefee D. Blackwell, Daniel C. Weary, William W. LaRue, Kansas City, for appellants, First National Bank and others, Caldwell, Blackwell, Sanders & Matheny, Kansas City, of counsel.

HIGGINS, Commissioner.

Action for declaratory judgment by Knox College, J. R. Clagett as Trustee under the Last Will and Testament of Alice Dean Swobe, deceased, and Deane Green Anderson, seeking construction of a voluntary deed in trust executed by Frances M. Dean as settlor. They seek to establish themselves as complete owners of the real estate and income held by the trust. Jones Store Company, lessee of the real estate, obtained joinder of additional parties necessary to determination of all interests including those to whom it should pay rentals. Such interpleader-defendants include Helen Dean Sullivan, granddaughter of the settlor, and Helen's only child, John Joseph Fennelly, and John's children, James Bush Fennelly and Elizabeth Fennelly, who are all of the living persons related by blood to the settlor, and they assert an interest in the title to the trust real estate and income. The First National Bank of Kansas City and Barret S. Heddens, Jr., cotrustees of a trust created by Mason L. Dean, deceased son of the settlor, are also interpleader-defendants asserting an interest in the trust property. The First National Bank of Kansas City, as Successor Trustee of the

Frances M. Dean Trust, is also joined as an interpleader-defendant because it presently holds and manages the property pending determination of the interests of the other parties to the action. Title to real estate constituting the corpus of the trust is thus involved, and the value of the interests of the parties is not less than $100,000, not including rental income accrued since the death of Alice Dean Swobe, life tenant of the trust.

The family tree of Frances M. Dean follows.

FRANCES M. DEAN
Donor
died 9-17-30

ALICE DEAN GREEN SWOBE 9-15-76 to 10-28-63 — ALVAH S. GREEN died 6-15-57 — MASON L. DEAN 10-22-80 to 5-20-62

DEANE GREEN ANDERSON adopted 7-30-53 — DEAN GREEN 11-17-08 to 2-23-41 — ALVAH S. GREEN, JR. 4-12-11 to 5-19-43 — HELEN DEAN SULLIVAN born 12-13-07

DONALD JAMES ANDERSON — No children — No children — JOHN JOSEPH FENNELLY

Testamentary devise to J. R. CLAGETT Trustee — Testamentary devise to ALLEN A. GREEN died 4-11-63 — Testamentary devise to FIRST NATIONAL BANK, et al., Trustees

KNOX COLLEGE

Frances M. Dean of Barnstable County, Massachusetts, as settlor, executed the trust deed in issue February 25, 1925. She was the former wife of Oliver H. Dean whose will was construed in First National Bank of Kansas City v. Sullivan, Mo., 394 S.W. 2d 273. Her trust deed involved an undivided one-half interest in two tracts of real estate at approximately 12th and Main Streets, Kansas City, Jackson County, Missouri, presently leased to Jones Store Company. (The other undivided one-half interest was conveyed outright to Mason L. Dean, only son of Frances M. Dean, February 25, 1925.) After conveying the property to her trustee, the settlor reserved a life income interest to herself and then provided:

(a) "This conveyance is made in trust for the use and benefit of the daughter of the grantor, Alice Dean Green, her sons, Dean Green and Alvah S. Green, Jr., and such other children, if any, as may be born to said Alice Dean Green before the termination of the trust and the distribution of said trust estate, as hereafter provided."

(b) "Subject to the estate or interest herein reserved to the grantor, Frances M. Dean, the Trustee shall hold, rent, lease, manage and control the estate hereby conveyed, and/or any other property becoming a part of the trust estate by reinvestment or otherwise, until the death of said Alice Dean Green, and if such death shall occur prior to January 1, 1945, then until the last named date. Upon the death of said Alice Dean Green, or, if such death shall occur prior to January 1, 1945, then on January 1, 1945, the trust shall terminate and the fee simple title to all property, real and personal, then constituting the trust estate shall be at once vested in the children of Alice Dean Green,

share and share alike, and/or the heirs, legatees or devisees of such children per stirpes and not per capita without the necessity of any conveyance or bill of sale by the Trustee (but the Trustee shall nevertheless execute upon request such conveyances * * * as may be necessary or desirable to confirm the title * * *."

"During the existence of said trust said Trustee shall collect the income from the trust estate and after paying all expenses * * *, he shall pay the net income to said Alice Dean Green so long as she shall live. Upon the death of said Alice Dean Green, if prior to January 1, 1945, the net income shall thereafter, until the termination of the trust be divided equally between the children of said Alice Dean Green, their and each of their heirs, legatees or devisees, per stirpes and not per capita."

The Trustee was given "all the powers of ownership in all property at any time constituting the trust estate" subject to the trust, and the deed also contained spendthrift provisions applicable to payments to be made to Alice Dean Green and to the children of Alice Dean Green or their heirs, legatees and devisees. Such provisions directed that all payments should be made for the sole and separate use of the beneficiary or beneficiaries "free from the debts, control or interference of any husband of any of them" and "no pledge, assignment or transfer of any payment * * * by way of anticipation shall be of any validity."

Mrs. Dean died testate September 17, 1930. Alice Dean Green and Mason L. Dean were her only children and they were devised the residue of their mother's estate. Mason served as his mother's trustee until his resignation at which time the First National Bank became the successor trustee. He died May 20, 1962, survived by his wife, Flora, and his only child, Helen Dean (Fennelly) Sullivan. Mason's estate was devised to the First National Bank and Barret S. Heddens, Jr., as cotrustees.

Alice Dean Green was born September 15, 1876. She was first married to Alvah S. Green and subsequently to one Swobe. She and Alvah had two sons, Dean Green born November 17, 1908, and Alvah S. Green, Jr., born April 12, 1911. Alice died October 28, 1963, predeceased by both of her sons. Dean Green died February 23, 1941, a resident of Jackson County, intestate, single and unmarried with no issue surviving him and leaving surviving him his father, Alvah S. Green, his mother, Alice Dean Green Swobe, and his brother, Alvah, Jr. Alvah S. Green, Jr., died intestate May 19, 1943, a resident of Jackson County, leaving no issue and leaving surviving him his widow, Deane Maitland Green, his father, Alvah S. Green, and his mother, Alice Dean Green Swobe. Alvah S. Green, estranged husband of Alice and father of Alice's sons, died June 15, 1957. Allen A. Green, Alvah's brother and legatee, died April 11, 1963, and Knox College, Galesburg, Illinois, is Allen's residuary legatee.

Deane Maitland Green, widow of Alvah, Jr., and thus Alice's daughter-in-law, was born September 14, 1910, and was legally adopted by Alice July 30, 1953. Deane later married Harold M. Anderson and, on December 8, 1962, they adopted Donald James Anderson.

Alice died October 28, 1963, and her second husband also predeceased her. She was survived by Deane (Maitland) Green Anderson, her adopted daughter; she was also survived by Helen Dean (Fennelly) Sullivan, John Joseph Fennelly, John Joseph Fennelly, III, James Bush Fennelly, and Elizabeth Fennelly, only natural blood descendants of Frances M. Dean, and they were the only natural blood relatives of Alvah S. Green, Jr., Dean Green, and Alice Dean (Green) Swobe, living at Alice's death. Alice willed the residue of her estate in trust to J. R. Clagett, trustee, and she remembered her adopted daughter, Deane (Anderson), Harold Anderson, Thomas Peter Clagett, and Laura Ellen Clagett, Women's City Club, Kansas City Association for the Blind, American Cancer Society, Heart Association, Society for Crippled Children, and Salvation Army.

She also anticipated litigation concerning the trust deed of her mother, Frances M. Dean, and made provisions for attorney fees for J. R. Clagett.

The trial court found that Deane Maitland Green Anderson, by her adoption, became a child of Alice Dean Green Swobe for all purposes within the meaning and intent of the Frances M. Dean trust deed, and that the remainder interest following the life interest in Alice, vested in Alice's children as a class upon the execution of the trust deed February 25, 1925, thus recognizing interests in respondents to the exclusion of the interpleader-defendants except the beneficiaries under the will of Alice Dean (Green) Swobe.

Respondents say that fractional interests are not of consequence between them because "adjustment will be made among them in accordance with their agreement of settlement," and they say further that they are entitled to the trust property to the exclusion of all appellants if any one of four theories is correct: "1. Title to the remainder * * * (as distinguished from the fee simple title) vested in the 'children of Alice' upon the execution of the deed in question. 2. Title to the remainder * * vested, upon the death of the 'children of Alice', in the 'heirs, legatees or devisees of such children,' there being no further contingency. 3. Deane Green Anderson, as the adopted child of Alice, was a member of the class, 'children of Alice,' and as such took either a vested fractional interest in the remainder (along with Alice's two sons) or if the remainder was contingent to the termination of the trust, she took the entire remainder interest as the sole surviving child. 4. Deane Green Anderson, as the adopted child of Alice, was upon termination of the trust, the sole surviving heir of Alice's two deceased sons * * * or as a descendant of Alice."

Appellants Sullivan, et al., take the position that the remainder interests were not vested upon execution of the deed but upon termination of the precedent life estate; that Deane Green Anderson was excluded from the class of children in the trust deed because she was not a child "born to" the life tenant; that the heirs of Dean and Alvah Green, Jr., are to be ascertained as of the date of the vesting of the contingent remainder upon the death of the life tenant rather than upon their deaths. Upon their stand, they claim that one half of the trust vested at the death of Alice in the then ascertained heirs of Alvah Green, Jr., whose only heir then was his widow, Deane Maitland Green (Anderson), and that the other half vested at the death of Alice in the then ascertained heirs of Dean Green whose only heir then was Helen Sullivan, granddaughter and only surviving blood relative of Dean Green exclusive of her son, John Joseph Fennelly, and his children.

Appellants First National Bank and Barret S. Heddens, Jr., cotrustees, agree with Sullivans that Deane Green Anderson was not within the limitation to the children of Alice Dean Green and that the remainder was contingent rather than vested. They claim, however, that there were no children or heirs, relatives, or devisees of the children of Alice surviving at her death and that the remainder thus reverted to Frances M. Dean and passed under her will one half to Mason (and then to them as his cotrustees) and one half to Alice.

The questions are whether a limitation in a trust deed to "children of" A (life tenant) "and/or the heirs, legatees or devisees of such children" creates a vested or a contingent remainder; and whether a child adopted by the life tenant is included within the limitation to children of the life tenant where the trust deed provided that it was made for the "use and benefit of" the life tenant, the two sons of the life tenant, and such other children as may be "born to" the life tenant before termination of the trust.

The parties remind that the rule to be observed in the construction of deeds as well as wills is to ascertain the intention of the grantor from the whole of the instru-

ment in question, allowing them to be effective "in line with the intent of their faces as gathered from the everyday, good sense of their language." Eckle v. Ryland, 256 Mo. 424, 165 S.W. 1035, 1043[9]. See also Garrett v. Wiltse, 252 Mo. 699, 161 S.W. 694, 696[2]; Garrett v. Damron, Mo., 110 S.W.2d 1112, 1114[2–5]; Leeper v. Leeper, 347 Mo. 442, 147 S.W.2d 660, 662 [2]; Norman v. Horton, 344 Mo. 290, 126 S.W.2d 187, 190[4, 5], 125 A.L.R. 531; Boxley v. Easter, Mo., 319 S.W.2d 628, 632[4]. The respondents remind also that "The rule is said to be well settled that no remainder will be construed to be contingent which may consistently with the intention be deemed vested. It is declared that the remainder will be deemed to vest immediately, when the instrument admits of that construction; that the remainder vests immediately in the absence of words indicating a design to postpone the vesting; that the remainder will not be construed to be contingent when it may without manifest violence done to the language be supported as vested. It has even been said, in the case of a conveyance inter vivos, that the remainder will be held to be vested 'unless the express words of the deed absolutely forbid such an interpretation.' The courts will make every intendment in favor of early vesting," 57 A.L.R.2d 108; and that adverbs of time usually denote when the enjoyment of an estate is to commence rather than when ownership is to vest. Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947, 950[4], 951[9]; Uphaus v. Uphaus, Mo., 315 S.W.2d 801, 804[4], 805 [5]; and see 33 Am.Jur. §§ 66–68, pp. 525–530, for characteristics which distinguish vested and contingent remainders.

▮▮▮ Nearly every deed case "presents some difference in language and circumstances, so that, to some extent, each must be considered apart from any other case in order to ascertain its meaning in the light of the facts as they were known and considered" by the grantor and auxiliary rules of construction should not be employed where the intention of the grantor is clear-

ly expressed. Gardner v. Vanlandingham, supra, 69 S.W.2d l. c. 949–950[1, 2]; First National Bank of Kansas City v. Sullivan, supra, 394 S.W.2d l. c. 277[1]. The intention of Frances M. Dean as to when and what vested is contained in the language "Upon the death of Alice * * the fee simple title to all property * * * shall be at once vested," and such language is so specific and unequivocal that it should not be disregarded in order to employ auxiliary rules of construction to find otherwise. First National Bank of Kansas City v. Sullivan, supra, l. c. 279[5].

Norman v. Horton, supra, 126 S.W.2d l. c. 188, involved a deed containing a similar provision: "The object and intention * * * is, by this deed to convey to the said Celest—B. Curd, *only* a life estate or interest .* * * with Remainder over to the heirs-of-her Body, * * * but should the said Celest—B. Curd die without Bodily Heirs * * * surviving her, then the title * * * at her death, shall revert to and vest absolutely in the Heirs-at-law of the said John Herriman * * *." The court there recognized the problem that "[c]ases presenting issues with respect to vested or contingent remainders and the time for ascertaining the membership of a class of remaindermen involve grants variously worded and make manifest the necessity for determining the intent of the grantor from the particular passage or passages and facts involved" and made a distinction between the vesting of title to the remainder estate and the vesting of enjoyment and possession appropriate to this case, saying, "Our review of the authorities has impressed us that grant after grant refers to the 'property', and many cases go off on the proposition that the contingency refers to the time of enjoyment and possession rather than the time the estate therein vests. Such cases are not applicable here because the expressed subject matter of the clause, and consequently the contingency, is 'the title to the * * * real estate'; and with the grantor thus expressly stating the 'estate' is involved in the contingency, we are pre-

cluded from holding that he had reference to a contingency impliedly involving only the time when the remaindermen were to come into the enjoyment and possession of the property. The estate in remainder was a substitutional fee simple * * *.

"The instant grant employs the words 'then' 'at her death.' If they are to be given their natural effect when read with the other provisions of the grant, they refer (as in the Eckle case) to the 'title' vesting in the 'heirs at law,' 'at her death.'" 126 S.W.2d 1. c. 192 [10–12]. By way of analogy, Mrs. Dean's trust "estate" is involved in the contingency, and her language, "fee simple title" "shall be at once vested" clearly does not mean "enjoyment and possession," and in both cases, it could not be determined until the life tenant's death whether she was going to have other children "born to" her, an obvious contingency. The trust deed in Eckle v. Ryland, supra, 165 S.W. 1. c. 1040, similarly provided: "On my death * * * the said trust herein provided for shall terminate, and the title to said real estate and property shall go to and vest in my two other children, * * * or to their heirs, should they or either of them be dead," and this, too, was held to show an intention by the grantor to create an alternative contingent remainder. See also Tevis v. Tevis, 259 Mo. 19, 167 S.W. 1003, 1007–1008[6]. The issue was the same and the provision similar in Buxton v. Kroeger, 219 Mo. 224, 117 S.W. 1147, 1149. John Lauman conveyed land in trust to William Lauman giving his wife a life estate with power of appointment and reserving a life estate to himself with power of appointment if he survived her. After the death of both grantor and his wife, the property was to be held for the use of the children born to or to be born to grantor and wife. The dispositive clause provided, "[a]t the expiration of ten years from and after the date when the youngest of said children shall have attained lawful age, the said trustee * * * shall make a final settlement with each of said children * * *, and thereupon this trust shall cease and be

determined, and the title to said real estate and every part and portion thereof, not disposed of as hereinbefore provided, shall * * * pass to and become fully vested in fee simple * * *." The remainder was held contingent and the reasoning of the court is applicable here. "It will be noted that the only method provided for the conveyance of this property by this provision of the deed, * * * was by direction of the life tenants or the survivor of them. This being true, the provision in the deed which fixed the date when the title should pass and vest, with the express provision that the title which the grantors sought to pass and vest by this clause, being the title to every portion of the real estate which had not been previously conveyed * * *, we see no escape from the conclusion that the title which passed and vested under the provisions of that clause, * * * is an absolute exclusion of the theory that any title in remainder was vested in any person at the date of the execution * * * of this deed. In other words, * * * this is an absolute exclusion that any title to an estate in remainder vested at the date of the execution of the deed, and clearly negatives any intention upon the part of the grantors * * * to create such vested remainder.

"* * * With the plain and unambiguous terms of this clause, there is no necessity for surmises or speculations as to the time when the title passed to this real estate." 117 S.W. 1. c. 1155.

In addition, it may be said that the powers of appointment reserved to the life tenants in that case had an effect akin to the "powers of ownership" during the life tenancy, given to Mrs. Dean's trustee in respect to vesting, and of such ownership the court said, "It must not be overlooked that in order to hold that the remainder was vested, * * * it must be found that the children did take a vested interest in the property from the execution * * * of the deed * * *. In our opinion, the strong terms employed in this deed to safeguard the absolute control, and in fact the

entire ownership, of this property, indicates, at least in some degree, the intention of the grantors to exclude the possibility during their lives of a vested right in any one else." 117 S.W. 1. c. 1154, 1155. See also La Vaulx v. McDonald, Mo., 190 S.W. 604, Loud v. St. Louis Union Trust Co., 298 Mo. 148, 249 S.W. 629, which cite Buxton v. Kroeger, supra, and in which the language on the time of vesting is honored in the same manner as any other intention expressed by grantors, settlors, and testators.

Riley v. Kirk, 213 Mo.App. 381, 253 S.W. 50, 51, contained a provision that "[a]fter the death of my wife, and after all said trust funds shall have been collected, the trustee shall divide the same * * * among my children or their heirs, giving to each such share as he or she would take as my heirs, and this trust shall cease and determine." The court rejected a contention that a vested remainder was created and cited Owen v. Eaton, 56 Mo.App. 563, in which a devise to the widow for life and at her death to testator's son or his heirs if he should not be alive showed an intention to create a substitutional contingent remainder. And in Hartnett v. Langan, 282 Mo. 471, 222 S.W. 403, 405, a devise to "Winefred Langan for life * * * remainder in fee to the heirs of her body, or in default of such issue, at her death then remainder in fee to her father, mother, brothers and sisters equally, or their heirs taking per stirpes," was held to create alternative contingent remainders. See also 128 A.L.R. 306, 340–346, for annotation of cases holding that a limitation to one or his heirs or to children or their heirs creates alternative contingent remainders, and alternative or substitutional remainders are necessarily contingent. Coley v. Lowen, 357 Mo. 762, 211 S.W.2d 18, 22[4].

■ The alternative and substitutional nature of the remainder in Mrs. Dean's trust deed arises from the provision that the "fee simple title" vests upon the death of her daughter "in the children of Alice Dean Green, share and share alike, and/or the heirs, legatees or devisees of such children per stirpes and not per capita." In these circumstances, had Dean and Alvah, Jr., survived Alice, the property would have vested in them *and* their heirs, legatees or devisees, "heirs" in that situation being used to limit the remainder interest and to describe its quality. Dean and Alvah, Jr., did not survive Alice, however, and the alternative "or" of "and/or" vests the remainder in the heirs of Dean and Alvah, Jr., as purchasers from the grantor, Frances M. Dean, as an alternative substitutional remainder. The contingency is survival: If Dean and Alvah, Jr., survive their mother, they take the remainder and can will or devise it; if they do not survive, only their heirs take, not from them or the life tenant, but directly from the settlor. This result flows from the settlor's use of "and/or" because it is the only way that meaning can be attributed to those words, and under the rules of construction no words of the grantor should be disregarded if they can be interpreted in the whole sense of the instrument. The word "or" would be superfluous if the intention of the grantor was to vest her remainder upon execution of her trust deed as found by the trial court; the word "and" alone would probably indicate vesting upon execution in Alice's sons *and* their heirs. In holding that the devise in Eckle v. Ryland, supra, created an alternative contingent remainder, the court said: "Any other view assigns no meaning or office at all to the phrase, 'or to their heirs, should they or either of them be dead.' Did she not have the legal right to say when the estate should vest, and in whom? Did she not exercise that right? Did its exercise contravene any rule of law? In respondent's view that phrase might as well be eliminated, and, when the grantor spoke those words, she might as well (nay, much better) have held her tongue. But the common sense of it lies another way. The just view is to assign an office to those words, and not make of them an empty phrase or a rhetorical flourish to perish by construction." 165 S.W. 1. c. 1042[9].

This meaning of "or" is consistent with other provisions of the trust deed because the words which follow are equally superfluous if the remainder vested upon execution of the deed. In that case it would certainly pass to the sons' "heirs, legatees" upon their deaths without the grantor having had to say so. "And his heirs" are presumed to be words of limitation and not of purchase unless a contrary intent is expressed. Garrett v. Wiltse, supra, 161 S.W. l. c. 696[6]. Likewise, "legatees or devisees" adds nothing to the quality of the remainder which is vested by statute without any such qualifying words. Section 442.460, V.A.M.S. Clearly, the use here in conjunction with "or" was descriptive of the class of purchasers from the grantor upon failure of Dean and Alvah, Jr., to survive Alice. In similar vein, "per stirpes and not per capita" following "heirs, legatees or devisees" indicates the substitutional intent in respect to primary takers, St. Louis Union Trust Co. v. Greenough, Mo., 282 S.W.2d 474, 478[5], because legatees and devisees, as primary takers, do not take per stirpes but directly without representation.

In addition to provision for "all the powers of ownership" in the trustee during the life of her trust, the settlor also incorporated spendthrift provisions into her trust deed which provisions are inimical to the characteristics of vested remainders, particularly the freedom of alienability. Such circumstances have been found to support an intent to create a contingent rather than a vested remainder. First National Bank of Kansas City v. Sullivan, supra, 394 S.W.2d l. c. 279–280[6].

Thus, when considered in its entirety, the trust deed discloses the settlor's intention to create alternative, substitutional remainders in fee upon the death of her daughter, Alice, to whom she gave a life estate; that the remainders were to go to the life tenant's sons or, if they were not living at the time she provided for the trust to terminate and fee simple title in the remainders to vest, then to go to their heirs.

Respondents insist that the settlor did not create a contingent remainder, and they suggest several situations in which they say a vested remainder would have been created. Typical of the propositions suggested by respondents is the example at 57 A.L.R.2d 113: "In most jurisdictions a disposition simpliciter, by deed or will, to A for life, remainder to his or her children (whether or not adverbs of time such as 'then,' 'upon her decease,' etc., are used) vests the remainder immediately upon the instrument going into operation in any child or children of the life tenant in esse, as individuals. (As already noted, the remainder ordinarily opens up to allow for the equal interests of children later born; * * *.)" See also Doerner v. Doerner, 161 Mo. 407, 61 S.W. 801, 802, where the rule was applied to devises "to my grandchild or grandchildren, the child or children of my said daughter * * * to have and to hold to my said grandchild or grandchildren, her, his, or their heirs and assigns, forever." Respondents rely on Garrett v. Wiltse, supra, Uphaus v. Uphaus, supra, Garrett v. Damron, supra, Grannemann v. Grannemann, Mo., 210 S.W.2d 105, and Sanders v. Jones, 347 Mo. 255, 147 S.W.2d 424. The deed in Garrett v. Wiltse was between the grantor and "Laura Alice Garrett and heirs," of the second part. The grant was to "parties of the second part, and to their heirs and assigns forever * * to have and to hold * * * unto her the said party of the second part, and to her heirs and assigns forever," with warranty "unto her the said party of the second part, her heirs and assigns * * *." 161 S.W. l. c. 695. The court simply found that grantor intended to convey a fee simple estate to Mrs. Garrett, the grantee, and not to her as a tenant in common with her children. In Uphaus v. Uphaus, a testator gave his son, Jesse, a life estate and provided: "It is my further desire and will that, at the death of my said son, * * * there shall be paid to his wife, Clara, * *

if she shall survive him, the sum of * * * ($3,000.00) out of said real estate so devised to my said son, Jesse, and the remainder in said real estate, after the expiration of the life estate of my said son, Jesse, and after the payment of the said sum * * * to said Clara H. Uphaus, shall go to and descend equally to the rest of my children or their descendants, share and share alike, per stirpes." The court held that "after the expiration of the life estate" and "after the payment of the said sum" referred only to the time when remaindermen were to have possession "in the absence of some clearly expressed contrary intent." 315 S. W.2d l. c. 805[5, 6]. "The only contingency involved, in so far as the remaindermen were concerned, was the value of their remainders, i. e., whether their remainders were each worth $1,000 less, depending upon whether Clara survived Jesse. And certainly that contingency had nothing to do with when the remainder estates vested." 315 S.W.2d l. c. 805[8]. The Uphaus will provision is not comparable to the grant made by Mrs. Dean. In Garrett v. Damron, 110 S.W.2d l. c. 1113, the court quoted the will as saying: "In lieu of dower, I give, devise and bequeath to my wife, Malinda E. Damron, the free and unrestricted use, possession and benefit of the home farm so long as she may live, and it is my will and desire that at the death of my wife * * * (the home farm) revert to my children or to the lawful heirs of each, namely * * *." The court held that the will gave testator's children a remainder which vested at his death subject to a life estate in his widow. The result was reached by application of the rule that the law favors vested estates and will resolve doubts as to whether testator intended a contingent or vested remainder in favor of a vested remainder. The case was distinguished as being unlike Eckle v. Ryland, supra, which has been found to support appellants here. Grannemann v. Grannemann found that "I give and bequeath all of the balance of my estate, both personal and real, to my beloved wife Lydia Grannemann, and after her death and the payment of the above legacies, the balance of the estate * * * shall be divided equally between Oscar Grannemann and Guy Grannemann or their heirs," contained no showing of an intention to postpone vesting and ruled that "in the absence of anything in the will showing, either expressly or by implication, that testator intends that the title to his bounty is to be postponed, it is conclusively presumed that his gift is to vest at his death." 210 S.W.2d 1. c. 107. The court distinguished Owen v. Eaton, supra, previously found to support appellants here. In Sanders v. Jones, supra, 147 S.W.2d l. c. 425, the will provided: "Upon the death or remarriage of my said wife, * * * said residue and remainder of my estate * * * I give, devise and bequeath to my said son * * * or his heirs at law, in fee simple absolute." The case was determined to be one for application of the rule favoring vesting and that any postponement was of enjoyment only.

None of the preceding five cases contained provisions of the nature of those employed by Frances M. Dean in her trust deed and the purposes to be accomplished were notably different. None of those cases involved a trust and, resultingly, there were no spendthrift provisions or powers of ownership which negatived freedom of alienation characteristic of vested ownership; none of them employed words so clear and unequivocal in meaning as "upon the death of said Alice Dean Green * * * the fee simple title * * * shall be at once vested in the children of Alice"; none of them employed "and/or" in respect to the remainders created.

Respondents "seize upon the frequently criticized phrase 'and/or', State ex rel. Adler v. Douglas, 339 Mo. 187, 95 S.W.2d 1179," Coplen v. Zimmerman, Mo., 271 S.W.2d 513, 514[1]; see also City of Washington v. Washington Oil Co., 346 Mo. 1183, 145 S.W. 2d 366; Russell v. Empire Storage & Ice Co., 332 Mo. 707, 59 S.W.2d 1061; Longacre v. Knowles, Mo., 333 S.W.2d 67; and urge that it clouds the intention of the grantor and emphasizes application of the presumption of vesting. None of those cases in-

volved interpretation of a deed or will where the court must give meaning to all words used by the grantor or testator if possible, and in Longacre v. Knowles, supra, and Coplen v. Zimmerman, supra, the court did give meaning to the phrase in the context used. It is not the purpose here to make a defense for use of "and/or"; nevertheless, the grantor has used the phrase and, despite criticism of its use, "the commonly accepted meaning of the phrase 'and/or' is 'Either *and* or *or*.' Webster's New International Dictionary." Coplen v. Zimmerman, supra, 1. c. 515[1]. Resolution of the problem of interpreting its usage is well stated in Schaffer v. City Bank Farmers' Trust Co., 239 App.Div. 531, 267 N.Y.S. 551, 553, where the phrase was used in a power of attorney in connection with a bank account: "The interpretation to be afforded it must depend in each instance upon the circumstances under which it is used and it must be so construed as to express the true intention of the parties to the transaction. * * * Both the conjunctive 'and' and the disjunctive 'or' are used, and effect should be given to each of them." As previously demonstrated, the usage by the settlor in her dispositive clause when read in the light of the entire trust deed is in the sense of "and" in respect to the quantum of estate in Alice's children if they survive her, and in the sense of "or" in respect to the purchasers who take upon Alice's death if she is not survived by her children.

Having determined that the settlor created alternative substitutional remainders to provide for the situation which would arise if Alice's sons predeceased Alice, the next problem is to determine Mrs. Dean's intention as to when the heirs of her grandsons would be ascertained. The Bank contends that they should be ascertained as of their deaths; Sullivans contend that since remainders vested in Alvah, Jr., and Dean only if they survived Alice, and if they did not survive, they took nothing and the substituted remaindermen then took in their own right directly from the grantor. Respondents, on this question, concede "that

if the remainder interests were contingent until the death of Alice, then the persons who qualify to take the remainder interests are to be determined as of that time."

When Frances M. Dean executed her trust deed she had a daughter, Alice, who had two sons, Dean and Alvah, Jr. Alice was estranged from her husband, and the trust property was placed with the trustee in a manner precluding an interest in Alvah and any control in Alice which shows Mrs. Dean's intention that the trust property should not pass through Alice except to Dean, Alvah, Jr., "and such other children, if any, as may be born to said Alice." Such provisions are also wholly inconsistent with any power of alienation residing in anyone until after termination of the trust and the then vesting of the fee simple title. The contingent remainder here was for the class of children "born to" Alice, and the general proposition on ascertainment of the membership of the class is stated in 30 A.L.R.2d 393, 396:

"Determination of the question whether the membership of a class described as indicated is to be ascertained as of the earlier or later period mentioned is usually but not always made consistently with the determination reached as to the vested or contingent character of the gift. In other words, if it is found that the gift is vested, the class will be ascertained as of the death of the testator, but if it is found that the gift is contingent, the class will be ascertained as of some later period (usually the termination of a precedent estate)." Tevis v. Tevis, supra, held that to take an alternative remainder following a contingent remainder, one had to survive the precedent estate. The testator provided that if John Tevis died leaving heirs of his body, the property went to them and if he did not leave such heirs the property vested in the testator's heirs at law. One of the testator's daughters predeceased him and a will made by her to her husband was held to pass no interest in the contingent remainder because it was not devisable prior to John's death, and those who acquired the remainder were

ascertained upon the event of John's death. 167 S.W. l. c. 1007, 1008[6]. See also Norman v. Horton, supra, 126 S.W.2d l. c. 192 [10, 11], and Eckle v. Ryland, supra, 165 S.W. l. c. 1043, and note that on this question also the grantor's intention controls. In New York Life Ins. & Trust Co. v. Winthrop, 237 N.Y. 93, 142 N.E. 431, Jabez A. Bostwick devised a part of his estate to New York Life, trustee, to pay his wife an income for life, and "upon her death to pay the same" to a daughter, Nellie Bostwick Morrell, for life, and upon the death of " 'said wife and daughter to convey, assign and deliver the said estate * * * to the lawful issue of Mrs. Nellie Bostwick Morrell share and share alike, or in default of such issue to the next of kin of Mrs. Morrell.' " Nellie died without issue in 1906; her mother died in 1920. The problem and resolution are in point: "The trustee was then under a duty to distribute the estate so held in trust among the next of kin of Mrs. Morrell. We are to determine the point of time which the testator had in mind as the one for the ascertainment of the class. On the one hand, it is asserted that the next of kin in being at the death of Mrs. Morrell acquired a title that was indefeasible though they died before the end of the trust and so before the date of distribution. * * * On the other hand, it is asserted that the class was to be ascertained when there was a duty to convey and deliver, and that survivorship at that time was one of the conditions of the gift.

" * * * the point of time which fixes the ascertainment of the class of issue and the vesting of their interests, is the one to which we must look in defining the substituted class described as next of kin. * * *

"Survivorship being a condition, we hold that it is survivorship at the time of distribution. * * * The will, when read in its totality, is instinct with the desire to hold the ultimate gifts in abeyance until the termination of the trust, and thereupon to adapt and proportion them to the conditions then existing." 142 N.E. 431–433

[1]. The rule of that case is based upon Hutchinson v. National Refuges for Homeless & Destitute Children, A.C. 794, 805: "Where a testator gives property in trust for the benefit of the persons who at a time subsequent to his own death shall by virtue of the statute of distributions be his next of kin the class is an artificial class to be ascertained on the hypothesis that the testator had lived up to and died at the subsequent period of time." The devise in Coley v. Lowen, supra, 211 S.W.2d l. c. 18–19, was "to my daughter, Addie Stone, for and during the period of her natural life only * * * and the remainder therein I give and bequeath to the children of said Addie, if she shall marry and leave issue * * * and in the event of her leaving at her death descendants of a deceased child, such descendants shall be entitled to the same share the parent, if living, would have been entitled to. But if the said Addie shall die unmarried, or married and leaving no children or their descendants, then I give and bequeath the remainder * * * to Napoleon B. Crisp * * * and to his heirs forever." Addie married and had Ellen, Mabel, and James. She died predeceased by Ellen and Mabel and survived by James. Ellen was survived by one child and Mabel by four children, who were the respondents. Appellant was a grantee of respondents' ancestors in deeds made prior to Addie's death and he contended he had title because the remainder was vested in Addie's children. The court held that the interests of the life tenant's children were contingent upon their surviving Addie due to their alternative nature. Of the time of vesting and ascertainment of takers the court said: "At the time the will was executed testator had but one grandchild in being, Napoleon B. Crisp, the son of the daughter Anna. If Addie never married, or having married had no issue living when she died, testator wanted his grandson Napoleon to have the property. Obviously he could not name in his will, as individuals, the unborn children of Addie. He could only think of and provide for them as a class, which could be described as

'children' of Addie, which class upon the birth of one or more of the class might yet fail or increase or decrease in number. So we see he devised a particular (life) estate to Addie; and the language * * * manifests the termination of the particular estate, at the death of Addie, as the intended time of ascertainment of those children of Addie who would become vested with the remainder in 'equal portions forever.' And it is our interpretation that testator intended, in the event children were born to Addie, one or more of which predeceased her, the share or shares which the deceased child or children, if living, would have 'been entitled to' should become absolutely vested, at Addie's death, in those descendants (of the deceased child or children) who survived Addie." 211 S.W.2d 22–23[4]. In this case the remainder to Dean and Alvah, Jr., (and such other children born to Alice) is contingent upon their surviving the life tenant. The ascertainment of the second class of takers is postponed until termination of the trust, and that class of survivors takes the then vested remainder. One who does not survive the life tenant takes nothing. Thus, only Deane Green Anderson as the *widow* of Alvah, Jr., and Helen Dean Sullivan as the cousin of Dean take, they being the sole surviving heirs of Alvah, Jr., and Dean.

Another factor which supports the preceding as the intent of the grantor is the provision for Alice to enjoy the net income from the trust during her life. This has been held to indicate that it is unlikely that the grantor intended to include the life tenant, whether sole heir or one of several heirs, in a class remainder following the life estate, and thus to indicate that the taking heirs were to be ascertained as of a time when the life tenant would not be an heir, V American Law of Property, Section 22.60, page 445, and cases there cited; and to treat the life tenant here as though she had any interest in the remainder to pass to anyone would be wholly inconsistent with the settlor's scheme which gave her expressly the life estate only. First National

Bank of Kansas City v. Sullivan, supra, 394 S.W.2d l. c. 279[5]. See also Irvine v. Ross, 339 Mo 692, 98 S.W.2d 763, 767, where intent to exclude testator's daughter, the life tenant, from taking the remainder limited to his heirs was found from such an inconsistency with testator's overall scheme and a plan for blood descent; and Commerce Trust Co. v. Weed, Mo., 318 S.W.2d 289, 294–295, where such exclusionary intent was found from a provision to limit takers to his bloodstream, the lack of provision to vest the remainder in the life tenant, and provision for substitution in the event the first named remaindermen predeceased the termination of the trust.

Still another factor supports this interpretation of the settlor's intention on ascertainment, i. e., the provision that at the time of vesting, the remainder would, in the event of prior death of the grandsons, vest in their "heirs, etc., per stirpes and not per capita." In St. Louis Union Trust Co. v. Greenough, supra, 282 S.W. l. c. 476, testator's daughter was given a life estate with remainder to her children and husband, but "If there be neither child nor descendants nor husband surviving, then * * * to the brothers and sisters of such daughter, per stirpes and not per capita." "[P]er stirpes and not per capita" was found, in connection with that will, to show testator's intention "to provide for substituted legatees in the event that at the time of distribution, any of the primary legatees ·* * * were deceased," 282 S.W.2d 478[5], and that "by providing for *substituted takers* for deceased brothers and sisters, he excluded deceased brothers and sisters as primary legatees and thereby included as primary legatees only * * * brothers and sisters who survived her." 282 S.W.2d 479 [7]. The application here in the event Dean and Alvah, Jr., had left wills naming their legatees and devisees would be to vest the remainder in only those who were alive at the termination because of the implications of futurity and substitution in the use of per stirpes in respect to primary takers. And this is consistent with the expressed

desire that Alvah, Sr., estranged husband of Alice, and Alice herself, have no control over the trust; yet the decree below would in recognizing Knox College as the owner of an interest also recognize a power in Alvah, Sr., to pass an interest in the trust property by will to his brother Allen and through the brother to Knox College. Thus, the use of per stirpes here is consistent with the testator's intention to provide for substitutional remainders which would benefit the children of the settlor and their descendants who might be alive at the time the trust terminated; and it is consistent with the purpose for which the trust was created and so clearly expressed by the settlor.

The Bank would apply the rule in 3 Restatement, Property, Section 308, page 1706: "When a limitation is in favor of the 'heirs,' 'heirs of the body,' 'next of kin' or 'relatives' of a designated person, or in favor of other groups described by words of similar import, and the persons who come within the term employed to describe the conveyees are to be determined by statute governing the interstate succession of property, then the statute is applied as of the death of the designated ancestor, *unless an intent of the conveyor to have the statute applied as of some other date is found from additional language or circumstances.*" See also 65 A.L.R.2d 1408. The emphasized exception is, of course, that which distinguishes the abstract restatement from "additional language or circumstances" in Mrs. Dean's trust deed which showed intention to postpone ascertainment, and the same is true of the cases cited by the Bank to support the rule. Green v. Irvin, 309 Mo. 302, 274 S.W. 684, did not consider the problem of postponement of ascertainment; and Kennard v. Wiggins, 349 Mo. 283, 160 S.W.2d 706, St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 186 S.W.2d 578, and Thomas v. Higginbotham, Mo., 318 S.W.2d 234, did not involve ascertainment of heirs at any time other than the time of vesting, nor did they involve the other items previously indicated to bear on the

grantor's intention to postpone ascertainment such as alternative class remainders to take effect only upon termination of the trust, exclusion of a life income beneficiary where she would otherwise be a member of one of the classes to take the remainder, and spendthrift and noninterference provisions to prevent alienation of, and nonblood sharing in, the remainders.

The Bank suggests also that since the limitation required survival of heirs of the children of Alice, the failure of such survival caused the remainder to revert to Frances M. Dean and to pass under her will. The Bank would support its contention with Hartnett v. Langan, supra, but the case is supportive of an ascertainment at the death of the life tenant in circumstances akin to this case. The devise there, essentially the same as Mrs. Dean's, was "to my niece, Winefred Langan for life * *, remainder in fee to the heirs of her body, or in default of such issue, at her death then remainder in fee to her father, mother, brothers and sisters equally, or their heirs taking per stirpes." 222 S.W. 1. c. 410. The niece died without issue and was predeceased by her sister Catherine, and Catherine's daughter. Catherine's husband claimed an interest as heir of his daughter. The court determined that the remainder was contingent and that it vested only in those who survived the niece, "The remainder being thus doubly contingent and taking effect or vesting only upon the death of Mrs. McCabe in such of the remaindermen or their heirs as were then living, the heirs who were to take the deceased remaindermen's portion * * * were the persons who were, *or would have been,* the heirs of such deceased remaindermen *at the time the remainder vested,* or at the date of Mrs. McCabe's death. A deceased heir of such remaindermen, of course, could take nothing, because not in existence when the estate vested. As no one is heir to the living, so it may be said that the dead are heirs to no one. At the date of Mrs. McCabe's death, Mrs. Connolly and her daughter both being dead, the daughter

could not, and did not, take as her mother's heir * * *, and she could transmit nothing by inheritance to her father and he was not the heir of his wife. Who, then, were *or would have been* the heirs of Mrs. Connolly *at the time of her* (Mrs. Mc-Cabe's) *death, * * *?*" 222 S.W. 1. c. 411 [14, 15]. The emphasized portions are clear indications that the heirs were not ascertained as of any time prior to vesting of the remainder interests. The reasoning of the case has additional application here. By substituting "children of Alice * * * or their heirs * * * per stirpes" for the niece's "father, mother, brothers and sisters * * * or their heirs * * * per stirpes," it may be said that the predeceased children of Alice, Dean and Alvah, Jr., and their heirs who survived them but who also predeceased Alice, took and transmitted nothing, thereby excluding any interest in the remainder in Alice, Alvah Green, Allen Green and Knox College for the same reason that the niece's father, mother, brother or sister took and transmitted nothing in Hartnett v. Langan, supra; i. e., because all predeceased the date when Mrs. Dean intended for Dean's and Alvah's heirs to be ascertained.

Mrs. Dean's trust deed expresses her purpose and intention to benefit her family, her daughter and children born to her, prior to any disposition of her property; she created life interests for herself and her daughter; she named her son and his successor trustee and gave them powers of ownership; she excluded husbands from control over the trust; she provided for vesting in a manner calculated to avoid an interest in estranged husbands; and her provisions are all consistent with protection of bloodline inheritance. In these circumstances, Knox College could not become a remainderman without disregard of the settlor's contrary intentions not to create a vested remainder and not to pass any interest to her daughter's estranged husband and through his and his brother's estates to Knox College. The only conclusion which is consistent with the mentioned particulars

and the over-all scheme of Mrs. Dean's trust deed is that she created class remainders to vest only upon termination of her trust in persons who met her description at that time. Alvah, Jr.'s only heir then was his widow, Deane Green Anderson; Dean Green's only heir then was his cousin, Helen Dean Sullivan. Each take an undivided one-half interest.

The remaining question is whether Deane Green Anderson, adopted daughter of Alice, is within the class of children of Alice Dean Green. The cases concerning rights of adopted persons recognize that "* * * it is not a question of the right of an adopted child to inherit, but simply a question of the testator's intention with respect to those who are to share in his estate," and "* * * whether an adopted child is embraced within the meaning of a described class of beneficiaries in a will is governed by the law in force at the time the will or other instrument was executed." First National Bank of Kansas City v. Sullivan, supra, 394 S.W.2d 1. c. 281[6, 7]. See also Raterman v. Raterman, Mo., 405 S.W.2d 891; First National Bank of Kansas City v. Waldron, Mo., 406 S.W.2d 56; Leeper v. Leeper, supra, 147 S.W.2d 1. c. 662[1–4]; Commerce Trust Co. v. Weed, supra, 318 S.W.2d 1. c. 298; Brock v. Dorman, 339 Mo. 611, 98 S.W.2d 672, 674[1].

Mrs. Dean's intention to exclude adopted children from the class of children of her daugther, Alice, is shown by the clear unambiguous language in paragraph (a) of her trust deed where she detailed the purpose and scheme of her entire trust. She named specifically Alice's two natural-born sons, Dean and Alvah, Jr., and then provided that the class which they then comprised could be enlarged but to include only "such other children, if any, as may be born to Alice." There is simply no mistaking the intention of the settlor at that point and references to children in other parts of the deed must be viewed in the light of, and consistent with, such clearly stated and

controlling purpose. Certainly such statement cannot be ignored in order to accomplish a result which would frustrate the motivating purpose of the trust.

"Born" is universally familiar and susceptible to simply definition, e. g., Webster's New Twentieth Century Dictionary, Second Edition: "Born, a. [pp. of bear (to give birth): now used only in passive constructions not followed by by] 1. Brought into life or existence." Other jurisdictions have had to give definition to the word. " 'Born' as ordinarily understood, and in fact, means 'brought forth,' and a child is completely born when delivered, or expelled from and becomes external of the mother." Goff v. Anderson, 91 Ky. 303, 15 S.W. 866. Wachovia Bank & Trust Co. v. Green, 238 N.C. 339, 78 S.E.2d 174, 178, held that a provision for named children of his niece "together with any child or children that may thereafter be born to either his niece * * or his nephew" showed clear intent of the testator to limit beneficiaries to those of his blood. In Third Nat. Bank & Tr. Co. v. Davidson, 157 Ohio St. 355, 105 N.E.2d 573, 577[2], a bequest was for "my then living grandchildren, whether *born* prior or subsequent to my decease," and the court held that adopted children of testatrix's children would not be *born* as her grandchildren at any time. In Vaughn v. Vaughn, 161 Tex. 104, 337 S.W.2d 793, 797[2], there was a provision that "if * * * any child of my son * * * is born after my death, the trustee shall immediately create * * * a new * * * trust." Under the Texas statute, which provides, as does Section 453.090, V.A.M.S., that after adoption a child shall be the child of its adopting parents as fully as though naturally born to them in lawful wedlock, the court held that the ultimate inquiry was the intention of the testator, and "[t]he use of the words 'born after my death' renders it most improbable that he was referring to children born to strangers. The language is conclusive that he meant to include * * * only those children who were actually 'born' of his son." 337 S.W.2d l. c. 797. In Wachovia Bank and Trust Co. v. Andrews, 264 N.C. 531, 142 S.E.2d 182, 187[9], the provision was for nieces and nephews "who hereafter may be born within twenty-one (21) years after [my] death," and the court excluded adopted claimants because "[b]irth is, by the express provisions [of the will] made a condition precedent to participate in the trust. * * * *Birth is not synonymous* with adoption." Blaker v. Blaker, 131 Kan. 833, 293 P. 517, held that a testator could exclude adopted as well as natural children. These authorities are consistent with the general proposition in 57 Am.Jur., Wills, Section 1174 (1966 Supp.): " * * * where the members of the class were referred to as being 'born' * * * of a designated person, it has generally been held that an adopted child will not be included within the class gift."

Respondents say that under the development of the adoption statutes in 1917, 1943, and as now provided in Section 453.090, V.A.M.S., adopted children are within a class limited to children "born to" a primary beneficiary because the law now provides that an adopted child " * * * shall be capable of inheriting from, and as the child of, said * * * parents * * as fully as though born to * * * them in lawful wedlock." The statute, however, does not prevent a person from giving his property to whom he pleases, and by expression to such effect he can provide, as Mrs. Dean has done here, that property be shared only by those children "born to" the settlor's principal beneficiary which, in this case, excludes Deane Green Anderson except as the widow of the natural-born son, Alvah Green, Jr. See First National Bank of Kansas City v. Waldron, supra, where "[t]he clear meaning of the wording 'their children, born in lawful wedlock' excluded adopted children. * * * We think this clause also indicates a fixed purpose to limit beneficiaries of her estate to blood relatives." And since Deane is not a child "born to" Alice, neither is she a sister of the sons who were born to Alice.

For the reasons indicated, the judgment is reversed except as to the distribution of

$2,229.60 accrued rentals due the estate of Alice Dean (Green) Swobe, and the cause remanded with directions to enter judgment vesting fee title to the real estate in issue one half to Deane Green Anderson and one half to Helen Dean Sullivan, and to cause the trustee to distribute all remaining cash, assign the Jones Store lease, and convey the real estate belonging to the Frances M. Dean trust one half to Deane Green Anderson and one half to Helen Dean Sullivan.

HOUSER, C., concurs.

WELBORN, C., not sitting.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.